# IN THE COURT OF APPEALS OF IOWA

No. 19-1271
Filed September 25, 2019

**IN THE INTEREST OF A.K. and O.S.,**
**Minor Children,**

**A.S., Mother,**
　　　Appellant,

**G.K., Father,**
　　　Appellant.

_____

Appeal from the Iowa District Court for Scott County, Korie Shippee, District Associate Judge.

A father and mother separately appeal the termination of their parental rights to two children. **AFFIRMED ON BOTH APPEALS.**

Joshua T. Cobie of Brubaker, Flynn & Darland, P.C., Davenport, for appellant mother.

Jack E. Dusthimer, Davenport, for appellant father.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant Attorney General, for appellee State.

Rebecca C. Sharpe of Aitken, Aitken & Sharpe, P.C., Bettendorf, attorney and guardian ad litem for minor children.

Considered by Tabor, P.J., and Mullins and May, JJ.

**TABOR, Presiding Judge.**

Gary and Ashley separately appeal from the termination of their parental rights to two children, six-year-old A.K. and five-year-old O.S. Gary contends the State did not prove the grounds to terminate. He also argues the State failed to make reasonable efforts to reunite him with the children by providing adequate visitation. Ashely does not challenge the statutory grounds for termination. Instead, she argues the State did not make reasonable efforts in considering her sister as a potential guardian and for the children's placement. Ashley also argues the court was not acting in the children's best interests in appointing the Iowa Department of Human Services (DHS) as the custodian and guardian and severing her parental relationship despite her close relationship with the children.

After reviewing the record, we find the State offered clear and convincing evidence of a statutory basis for termination. We also believe severing the legal relationship with their parents is in the children's best interests. As is guardianship with the DHS for the purpose of permanency through adoption. We further find the DHS acted reasonably in its efforts to support the parents' attempts to reunify with the children. We affirm on both appeals.

## I. Facts and Prior Proceedings

The DHS has interacted with this family since 2014 because of continual concerns for Gary's domestic violence, both parents' substance abuse, and overall instability. Throughout this time, both parents resisted services. They were uncooperative and belligerent with the DHS and service providers. Both parents have a long history of substance-abuse and mental-health difficulties with few attempts at treatment. In foster care, the children have revealed a significant

history of abuse- and neglect-related trauma through aggressive, violent, and sexualized behaviors.

The DHS intervened with the family in October 2016 after police responded to a domestic violence call at their home. Gary, under the influence of drugs, threw a hatchet at Ashley while then two-year-old O.S. was nearby. He ultimately pleaded guilty to assault with a deadly weapon. Gary has not seen or spoken to the children since committing that crime.

Ashley agreed to receive services and kept the children in her care but did not consistently show a commitment to providing them a safe and stable environment. The DHS suspected she continued her volatile relationship with Gary. She did not participate in mental-health treatment. She did not have stable housing. She and the children lived with her sister, Amanda, for a few months. But the landlord eventually decided too many people were in the dwelling. Homeless, in September 2017, Ashley voluntarily placed the children in foster care.

At the December 2017 removal hearing, Gary requested visitation. In its January 2018 adjudicatory order, the juvenile court acknowledged Gary's request, but flagged the safety concerns associated with reestablishing contact after being out of their lives for more than a year. The court found it appropriate for Gary to start writing letters and move to video calls before he moved to in-person interactions.

The DHS incorporated the letter-writing requirement into its case plan in early 2018. But Gary's first letter fell short. In it, he focused on his own problems and suggested the children would be returning to his care soon. The DHS offered

to help him rewrite the letter but it never happened. In September, he penned his second letter. But the children's therapist recommended the letter not be given to the children. She said, "[T]he benefit of the letter does not outweigh the risk at this time to the children's mental health and behavioral stability." She also said, "[T]he children have not verbalized any feelings of wishes to communicate with their biological father during their time in therapy." Relying on the therapist's opinion, the DHS did not share this or any other letter with the children. The court agreed with that decision. Thus, Gary never reestablished contact with the children. The guardian ad litem (GAL) and other service providers noted the children never asked about their father. The GAL doubted whether the children remembered Gary at all.

Meanwhile, the parents' compliance with court orders and participation in services was poor. Neither ever obtained ordered psychological evaluations. Gary did not participate in anger management classes, and Ashley never did any mental-health treatment.

The parents also left substance-abuse issues unresolved. In September 2018, Gary did undergo a substance-abuse evaluation, which recommended outpatient treatment. He began treatment in October but unsuccessfully discharged following a positive drug screen. He never attended any random drug test DHS requested, saying he could not leave work. Ashley tested positive for drugs in April 2017, tested negative in October 2017, and did not comply with requests for tests in August and September 2018. It does not appear she ever obtained a substance-abuse evaluation or treatment.

Likewise, domestic violence remained a concern. Gary completed the batterer's education program. And both parents denied continuing their relationship. But the volatile relationship persisted. In May 2019, Gary's neighbors called police after seeing him assault Ashley. Gary and Ashley resisted arrest. Police charged them both with interference with official acts. Neighbors told police they were "sick of the fighting ever since" both Gary and Ashley had moved in six months ago. Ashley also revealed to the police that she was six months pregnant, and Gary was the father. Although the district court imposed a no-contact order, Gary violated it and spent seven days in jail.

Ashley did not maintain regular contact with the children. The DHS offered her fifty-one visits since the voluntary foster care placement in September 2017. She attended ten. She stopped seeing them in April 2018, one year and two months before the final day of the termination hearing.

Both parents blamed the DHS and service providers for their inability to complete case-plan tasks. Gary claimed his work obligations prevented compliance with drug testing. He also faulted the DHS for not accommodating his need for services in Cedar Rapids, where he lived, because he did not have a car or driver's license to enable him to travel to Davenport. The DHS eventually transferred supervision of his case to the Linn County family safety, risk, and permanency office.

Both parents were combative and belligerent with DHS and service providers. In November 2018, DHS workers and other service providers decided it was no longer safe to meet Gary in person. They noted Gary was "paranoid" and verbally abusive to workers. Gary sent texts to the DHS worker she described

as "frightening," "angry," and "hostile." He could not manage his anger and threatened workers with criminal investigations and lawsuits. The DHS limited its communication with Gary to email.

At the termination hearing, the DHS worker listed the services offered to the parents, including domestic-violence education, mental-health treatment, substance-abuse evaluation and treatment, parenting classes, transportation assistance, and safety planning. The DHS worker also testified the children have no bond with the parents. The juvenile court found the State proved the grounds for termination for both parents under Iowa Code section 232.116(1), paragraphs (b), (e), (f), and (*l*) (2018). Ashley and Gary separately appeal.[1]

## II. Analysis

### A. Statutory Grounds

Ashley does not challenge the statutory grounds for termination of her parental rights. By contrast, Gary challenges each of the four grounds the juvenile court found to terminate his rights.

"We will uphold an order terminating parental rights if there is clear and convincing evidence of grounds for termination under Iowa Code section 232.116." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). When the juvenile court terminates parental rights on more than one ground, "we need only find termination

---

[1] We review termination-of-parental-rights cases de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). While not bound by the juvenile court's fact findings, we give them weight, particularly on credibility issues. *Id.* The State must present clear and convincing evidence to support the termination. *In re A.M.*, 843 N.W.2d 100, 110–11 (Iowa 2014). Evidence satisfies that standard if no serious or significant doubts exist about the correctness of conclusions of law drawn from the evidence. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). The children's best interests remain our primary concern. *In re L.T.*, 924 N.W.2d 521, 529 (Iowa 2019).

appropriate under one of these sections to affirm." *In re J.B.L.*, 844 N.W.2d 703, 704 (Iowa Ct. App. 2014). We focus on paragraph (e), which requires proof

> (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (2) The child has been removed from the physical custody of the child's parents for a period of at least six consecutive months.
> (3) There is clear and convincing evidence that the parents have not maintained significant and meaningful contact with the child during the previous six consecutive months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so.

Iowa Code § 232.116(1)(e). Gary focuses his argument on the third element, particularly on the "significant and meaningful contact" requirement. That phrase "includes but is not limited to the affirmative assumption by the parents of the duties encompassed by the role of being a parent." Iowa Code § 232.116(1)(e)(3). On top of financial obligations, this affirmative duty "requires continued interest in the child, a genuine effort to complete the responsibilities prescribed in the case permanency plan, a genuine effort to maintain communication with the child, and requires that the parents establish and maintain a place of importance in the child's life." *Id.*

Gary insists he tried to maintain significant and meaningful contact. But the record does not support this assertion. He did not provide any financial assistance to the children. He did not see them for more than two and one-half years, and made little other effort to communicate with them. He did not ask for visitation until the removal. At that point he had not seen them in over one year. When the court decided written correspondence would be a good first step in restoring their relationship, Gary wrote one inappropriate letter. He waited another nine months before writing a second letter, at which point the children's therapist felt it was no

longer in their best interests to receive dispatches from their father. Several witnesses described Gary as a "stranger" to the children.

Beyond the lack of contact, Gary made no meaningful progress in meeting the other expectations in the case plan. He did not complete substance-abuse or mental-health treatment and continued to assault Ashley. Gary has not done what is minimally necessary to be a safe and stable parent. The evidence is clear and convincing he did not maintain significant and meaningful contact with the children.

### B. Reasonable Efforts—Visitation

Separate from his arguments concerning the statutory grounds for termination, Gary asserts the DHS did not make reasonable efforts to reunite him with the children. Under Iowa Code section 232.102(9), the DHS is required to "make every reasonable effort" to return children to their parents' care "as quickly as possible" consistent with the children's best interests. *C.B.*, 611 N.W.2d at 493. The reasonable-efforts requirement is not "a strict substantive requirement of termination." *Id.* But when relying on paragraphs (f) and (h) as the grounds for termination, the State must show the DHS made reasonable efforts toward reunification as part of its ultimate burden of proof. *See L.T.*, 924 N.W.2d at 527. "[W]hat constitutes reasonable services varies based upon the requirements of each individual case." *In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002). We focus on the services provided and the parent's response. *C.B.*, 611 N.W.2d at 494.

Gary's main complaint is that the DHS did not provide him visitation. It is true, reasonable efforts includes a visitation arrangement. *In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996). But at the same time, any such arrangement must "protect[] the children from the harm responsible for the removal." *Id.*

As discussed above, the case plan explained what steps Gary needed to take to reestablish visitation after so long of an absence from his children. Gary did not take those steps. The court reasonably relied upon the therapist's report that introducing Gary's letters to the children could do more harm than good given their progress in therapy. And the DHS acted reasonably in prioritizing the children's best interests while giving Gary an opportunity to reestablish contact. Gary is not entitled to relief based on his reasonable-efforts argument.

### C. Reasonable Efforts—Relative Placement

For her part, Ashley contends the State failed to make reasonable efforts because it did not place the children with her sister, Amanda, and Amanda's husband, Andy. Before the voluntary foster care placement, Ashley and the children lived briefly with Amanda and Andy in Davenport. They had to move out because the landlord would not allow so many people to live in one unit.

Around September 2018, Amanda and Andy asked whether the DHS would place the children with them. The DHS ran a background check and reviewed Amanda and Andy's written responses to their inquiries. The DHS denied the request based on Andy's criminal record. As such, DHS never conducted a home study and stopped considering Amanda and Andy as a possible placement.

The DHS worker opposed placement with Amanda and Andy because of an incident in which Amanda chased the worker in her car, yelling obscenities. The GAL also opposed placing the children with Amanda and Andy. She was concerned neither had "a true grasp of the danger Gary poses to Ashley and the children." They "lack the ability to care for children who have been severely emotionally traumatized and neglected."

At the termination hearing, Ashley questioned the DHS placement decision. She pointed out Amanda and Andy already have guardianship of their niece. Ashley asked the court to grant additional time and order the DHS to conduct a home study. The court denied the requests.

On appeal, Ashley contends the State failed to make reasonable efforts to fully evaluate suitable relative placements. She further contends the decision to not conduct a home study was not supported by substantial evidence.

"The purpose underlying the reasonable-efforts requirement is to help the parent to make the changes necessary to return the child." *In re G.J.*, No 19-0282, 2019 WL 1934003, at *2–3 (Iowa Ct. App. May 1, 2019). Ashley does not explain how placing the children with her sister would further Ashley's ability to reunite with them. Also, Amanda and Andy are not intervenors. Even if they were, the DHS made reasonable efforts to ascertain their suitability for placement. Amanda and Andy obtained guardianship over their niece through private proceedings, which did not require a home study. The DHS decided because they did not pass the background check, they would not have a successful home study. The DHS acted reasonably in assessing the relative placements.

### D. Best Interests of the Children

Next, Ashley contends the court erred in placing the children in the custody and guardianship of the DHS. She argues this is not the least restrictive placement. The State counters Ashley's parental rights have been terminated and she has no standing to raise this claim.

During CINA proceedings and following any dispositional or permanency hearing, the court is required to make the "least restrictive disposition appropriate

considering all the circumstances of the case." Iowa Code § 232.99(4). Ashey is not challenging a dispositional or permanency order. She only identifies the termination order as her basis for appeal.

Following termination of parental rights, the court must transfer guardianship and custody of the child to one of several options, including the DHS or a relative. *See* Iowa Code § 232.117(3). The guardian must then make "every effort to establish a stable placement for the child by adoption or other permanent placement." *Id.* § 232.117(6). The juvenile court has oversight but does not direct the appointed guardian in placement decisions. *See In re E.G.*, 738 N.W.2d 653, 657 (Iowa Ct. App. 2007). The terminated parent has no say in the further placement of the child. *See In re K.A.*, 516 N.W.2d 35, 38 (Iowa Ct. App. 1994). Thus, Ashley lacks standing to challenge the juvenile court's decision to appoint the DHS the children's guardian.

### E. Closeness of parent-child relationship

Finally, Ashley contends termination would be detrimental to A.K. and O.S. because of the closeness of the parent-child relationship. *See* Iowa Code § 232.116(3)(c). But Ashley stopped seeing the children over a year before the hearing. Before that, her attendance at visitation was lackluster. The DHS worker testified no bond existed between the children and either parent. The therapist reported the children had not mentioned their parents in some time. On these facts, section 232.116(3)(c) does not weigh against termination.

**AFFIRMED ON BOTH APPEALS.**