**IN THE COURT OF APPEALS OF IOWA**

No. 19-1798
Filed January 9, 2020

**IN THE INTEREST OF J.G. and L.G.,**
**Minor Children,**

**J.G., Father,**
　　Appellant.
_____

　　Appeal from the Iowa District Court for Madison County, Brendan Greiner,

District Associate Judge.

　　A father appeals the termination of his parental rights to his children.

**AFFIRMED.**

　　Julie A. Forsyth of Forsyth Law Office, P.L.L.C., Winterset, for appellant

father.

　　Thomas J. Miller, Attorney General, and Meredith Lamberti, Assistant

Attorney General, for appellee State.

　　Penny B. Reimer of Cooper, Goedicke, Reimer, & Reese, PC, West Des

Moines, attorney and guardian ad litem for minor children.

　　Considered by Vaitheswaran, P.J., and Mullins and Schumacher, JJ.

**MULLINS, Judge.**

A father appeals the termination of his parental rights to his two children, born in 2014 and 2015.[1]  He complains the children were not placed with their paternal grandmother upon removal, argues termination is not in the children's best interests, and requests an additional six months to work toward reunification.

## I.    Background Facts and Proceedings

The Iowa Department of Human Services (DHS) provided the family with services beginning in early 2017.  In August 2017, allegations arose that the mother allowed the children in the presence of people consuming marijuana, the mother was in the illegal possession of prescription pills, and domestic violence occurred in the presence of the children.  Law enforcement removed the children from the home.  At the time, the parents were not in a relationship.  The mother stipulated to formal removal.  The children were placed in the legal custody of DHS for physical placement in foster care.

Shortly after removal, the father stipulated to violating his probation and was ordered to serve thirty days in jail.  In October, the father again stipulated to violating his probation after testing positive for methamphetamine and THC, and his previously suspended prison sentences were imposed—three consecutive indeterminate terms of incarceration not to exceed five years, five years, and two years.[2]  The children were adjudicated in need of assistance in November upon the parents' stipulation.

---

[1] The mother's parental rights were also terminated.  She does not appeal.

[2] In 2016, the father was convicted of a controlled-substance-gathering violation, possession of a controlled substance with intent to manufacture or deliver, and child endangerment.

In February 2018, the children were returned to the mother's custody. The placement was confirmed at a March review hearing. Shortly thereafter, the mother was arrested. The children were again formally removed from the mother's care and were placed in the custody of the mother's then boyfriend, B.D., with whom the mother had been living since November 2017 and the children since their return to the mother's custody. The children have remained in the custody of B.D. since; they are extremely attached to him and integrated into his home, and they refer to him as dad. B.D. is no longer in a relationship with the children's mother. He is willing and able to adopt the children and be their permanent caregiver.

Time went on. The father remained incarcerated throughout the proceedings. In or about October 2018, the father was transferred to a maximum security facility after, according to his prison counselor, he was caught using methamphetamine. He meaningfully engaged in services relating to substance abuse and parenting while incarcerated. Generally, he had consistent phone contact with the children when he was able. He also sent them birthday and Christmas cards. However, he has had no in-person contact with the children for nearly two years. While he requested it, DHS determined in-person visitation would be contrary to the children's best interests, a determination not challenged on appeal.[3] The tentative discharge date of the father's prison sentences is in

---

[3] One of the DHS workers testified the children were not allowed to visit the father in prison because they were the victims relative to his child-endangerment conviction. DHS also considered the travel that would be required for visits, the structure and atmosphere of the visits in the prison setting, and the children's ages in determining in-person visits would be inappropriate.

2023. At a permanency hearing in early July 2019, the father testified he expected to be paroled in a month, after which he would reside in a work-release facility, which he testified he would be out of in another month. At the time of the termination hearing in late August, the father was still in prison. He testified he would be eligible for parole in November.

In February 2019, DHS recommended an extension of time to work toward reunification. The juvenile court granted the request. The State ultimately petitioned for the termination of both parents' rights in July 2019. Following a hearing, the juvenile court terminated the father's parental rights under Iowa Code section 232.116(1)(f) (2019) as to the older child, section 232.116(1)(h) as to the younger child, and section 232.116(1)(j) as to both children. As noted, the father appeals.

## II.     Standard of Review

We review termination-of-parental-rights proceedings de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). Our primary consideration is the best interests of the children, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the children's safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

## III.    Analysis

### A.     Placement

The father argues the juvenile court erred in not placing the children with their paternal grandmother when they were removed for the second time in March 2018. But DHS explored the paternal grandparents as a placement in September and October 2017. The day the children were supposed to move to the

grandparents' home, the grandparents decided they did not want to be a placement for the children. When the children were again removed from the mother's custody, the paternal grandmother contacted DHS and stated her interest in being a placement for the children. DHS provided the grandmother with information concerning the process for having the children placed with her. Again, the grandparents did not follow through. And, thereafter, the father never meaningfully complained of the children being in B.D.'s custody. Rather, he testified to his satisfaction of the children being placed in B.D.'s custody. In any event, any error in the children's custodial placement after the second removal cannot now be remedied and the issue is moot. *See In re A.M.H.*, 516 N.W.2d 867, 871 (Iowa 1994). To the extent the father argues the children should have been placed with relatives upon termination, he lacks standing. *See In re K.A.*, 516 N.W.2d 35, 38 (Iowa Ct. App. 1994).

B. Best Interests and Statutory Exception

The father argues termination of his parental rights is not in the children's best interests, *see* Iowa Code § 232.116(2), due to the harm resulting from severing the parent-child relationships. *See id.* § 232.116(3)(c). We choose to separately address the often-conflated best-interests and statutory-exception arguments. *See In re A.S.*, 906 N.W.2d 467, 472–73 (Iowa 2019) (discussing three-step termination framework); *In re A.R.*, 932 N.W.2d 588, 591 (Iowa Ct. App. 2019) (same).

In determining whether termination is in the best interests of a child, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical,

mental, and emotional condition and needs of the child." *Id.* § 232.116(2). The children have had no in-person contact with their father in the neighborhood of two years. While the father has maintained relatively consistent and appropriate contact with the children, that is not a meaningful substitute for fostering or maintaining a parental bond with his children.

And, assuming the father is paroled in the near future, we disagree with his assertion that the children can be placed with him at that time. The DHS worker testified the father would need to progress from therapeutic, to fully-supervised, to semi-supervised, and then to unsupervised visitations after his release from prison before the children could be returned to his care. The worker also testified it would take the father at least six months to progress to semi-supervised visitation and it would take at least a year of the father being fully engaged in services outside of a custodial setting before the children could be placed in his care. Given the father's track record,[4] we agree with the caseworker that the father would need to demonstrate an extended period of sobriety after his release from prison before the children could be placed in his care. *See In re A.H.*, No.19-0605, 2019 WL 3317411, at *3 (Iowa Ct. App. June 24, 2019) (noting a period of sobriety while under supervision cannot be relied upon to believe the parent's future conduct will differ from past conduct). While we commend the father for his engagement in services while in prison, "[i]t is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section

---

[4] The father has a long history of substance abuse. He began consuming alcohol and marijuana when he was fifteen years old. He has also used LSD, mushrooms, and methamphetamine. He conceded he has been a daily drug user his entire adult life except while incarcerated.

232.116(1) by hoping someday a parent will . . . be able to provide a stable home for the child." *In re A.B.*, 815 N.W.2d 764, 777 (Iowa 2012) (quoting *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010)). Deferring permanency any longer to wait for the father to be released from prison and then experiment with responsible parenting would be contrary to these children's best interests—the children need permanency and stability now. *See id.* at 778 ("It is simply not in the best interests of children to continue to keep them in temporary foster homes while the natural parents get their lives together." (quoting *In re C.K.*, 558 N.W.2d 170, 175 (Iowa 1997))).

Furthermore, the children consider their current placement their father. They refer to the appellant father by his first name. The current placement is willing and able to adopt, and the children are integrated into his home and are thriving. Continued stability and permanency in this home are in these children's best interests. *See* Iowa Code § 232.116(2)(b); *cf. In re M.W.*, 876 N.W.2d 212, 224–25 (2016) (concluding termination was in best interests of children where children were well-adjusted to placement, the placement parents were "able to provide for their physical, emotional, and financial needs," and they were prepared to adopt the children). We conclude termination is in the children's best interests.

We turn to the parent-child bond. Iowa Code section 232.116(3)(c) allows the juvenile court to decline to terminate parental rights when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." The application of the statutory exception to termination is "permissive, not mandatory." *M.W.*, 876 N.W.2d at 225 (quoting *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014)). While we

acknowledge a bond between the father and children, that bond can only be characterized as limited at best given these children's young age and the father's long-term physical absence from their lives. Upon our review, we find the evidence insufficient to show "termination would be detrimental to the child[ren] . . . due to the closeness of the parent-child relationship." *See A.S.*, 906 N.W.2d at 476 (noting parent bears burden to establish exception to termination). Rather, the evidence shows the trauma that would result from removing the children from their current placement would far outweigh the harm caused by terminating the father's parental rights. We agree with the juvenile court that the application of the permissive exception is unwarranted.

C.     Extension

Finally, the father requests an additional six months to work toward reunification. If, following a termination hearing, the court does not terminate parental rights but finds there is clear and convincing evidence that the child is a child in need of assistance, the court may enter an order in accordance with section 232.104(2)(b). Iowa Code § 232.117(5). Section 232.104(2)(b) affords the juvenile court the option to continue placement of a child for an additional six months if the court finds "the need for removal . . . will no longer exist at the end of the additional six-month period."

Upon our de novo review, we are unable to make such a finding. As explained above, even if the father were released from prison the day of the termination hearing, he would be required to fully engage in services in the community for an extended period of time, certainly longer than six months. Thus,

we are unable to conclude he would be able to resume care of the children within six months.

## IV.    Conclusion

We affirm the termination of the father's parental rights.

**AFFIRMED.**