# IN THE COURT OF APPEALS OF IOWA

No. 19-1985
Filed March 4, 2020

**IN THE INTEREST OF J.C., J.J., and G.J.,**
**Minor Child,**

**D.C., Father of J.C.,**
　　　Appellant,

**R.L., Mother,**
　　　Appellant.

_____

Appeal from the Iowa District Court for Polk County, Kimberly Ayotte, District Associate Judge.

The mother and one of the fathers separately appeal the termination of their parental rights to their respective children. **AFFIRMED ON BOTH APPEALS.**

Bryan Webber of Carr & Wright, P.L.C., Des Moines, for appellant father.

Adam M. Stone, Urbandale, for appellant mother.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant Attorney General, for appellee State.

Kathryn Miller of Juvenile Public Defender, Des Moines, attorney and guardian ad litem for minor children J.C. and G.J.

Jami J. Hagemeier of Williams & Hagemeier, P.L.C., Des Moines, attorney and guardian ad litem for minor child J.J.

Considered by Bower, C.J., and Greer and Ahlers, JJ.

**GREER, Judge.**

The mother of J.J., G.J., and J.C. and the father of J.C. separately appeal the termination of their parental rights to their respective children.[1] The mother and father both challenge whether the statutory grounds for termination have been met, maintain termination is not in the best interest of their respective children, argue an exception precludes termination, and assert the children should have been placed in the custody of one of the grandmothers when their parental rights were terminated. The mother also maintains she should have been given additional time to work toward reunification. On de novo review, *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010), we consider each appeal in turn.

**I. Mother's Appeal.**

The mother's parental rights to eleven-year-old J.J., nine-year-old G.J., and five-year-old J.C. were terminated under Iowa Code section 232.116(1)(f) and (*l*) (2019).[2] On appeal, we may affirm if we find the any one of the statutory grounds met. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016) ("The first step is to determine whether any ground for termination under section 232.116(1) has been established."). We focus on section 232.116(1)(f), which gives the court discretion to terminate parental rights when the court finds all of the following have occurred:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or

---

[1] These children have been involved with five founded child abuse investigations since 2009. In these proceedings, the parental rights of the father of J.J. and G.J. were also terminated. He does not appeal.
[2] The termination trial took place over three dates: July 29, August 27, and October 17, 2019.

> for the last twelve consecutive months and any trial period at home has been less than thirty days.
>     (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

The mother only challenges the fourth element—whether the children could be returned to her care at the time of the termination hearing. *See* Iowa Code § 232.116(1)(f)(4); *In re L.M.*, 904 N.W.2d 835, 839 (Iowa 2017) (noting "at the present time" refers to the time of the termination hearing).

The mother, who began inpatient treatment for her addiction to marijuana and cocaine between the first and second day of the termination trial, claims the children could have been returned to her care at the inpatient facility. Even if the facility technically allows children to live with their parents, we cannot say returning these children to the mother's care was realistic. *See In re M.S.*, 889 N.W.2d 675, 680 (Iowa Ct. App. 2016) ("[A] child cannot be returned to the custody of the child's parent under section 232.102 if by doing so the child would be exposed to any harm amounting to a new child in need of assistance adjudication." (alteration in original) (citation omitted)). Complicating her recovery, the mother has a more than twenty-year history with illegal substances. According to her own testimony, her only periods of sobriety since she was eleven years old were nine months at the beginning of this case—starting after the children's removal in early December 2017—and for each of her three pregnancies. The court delayed permanency to give the mother a six-month extension in January 2019 and advised her she needed to "fully engage in substance abuse treatment and demonstrate a commitment to a style of recovery." The mother did not do so. She avoided recommended treatment and, sadly, her use of illegal substances increased. The

mother went from sporadically using cocaine to being a daily user; a habit she continued until after the first day of the termination proceedings. Even on the final day of the three-day termination trial, the mother had less than two-and-a-half months of sobriety, all of which was within a structured, residential setting. Neither the mother's previous attempts at treatment nor previous court intervention with the family enabled the mother to achieve long-lasting sobriety. We cannot say the children could be safely returned to her care at the time of the termination hearing.

Next, the mother argues termination of her parental rights is not in the children's best interests. *See* Iowa Code § 232.116(2); *see also In re D.S.*, 806 N.W.2d 458, 474 (Iowa Ct. App. 2011) ("Even if a statutory ground for termination is met, a decision to terminate must still be in the best interests of a child after a review of section 232.116(2)."). We determine the best interests of the children by using the statutory framework rather than our own perceptions. *See In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). We "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2). Without debate, the mother failed to provide her children stability or consistent parenting. Her drug use, which affects both her financial and mental ability to care for the children, took precedence over their needs. While the mother is an attentive parent during her supervised visits with the children, she cannot safely parent them full-time while actively addicted to and using illegal substances. Additionally, the youngest two children were comfortable in the home of the foster parents, who intended to adopt them and the oldest child if the parents' rights were terminated. *See id.* § 232.116(2)(b) (allowing

the court to consider "whether the foster family is able and willing to permanently integrate the child into the foster family" when considering best interests). Termination of the mother's rights is in the children's best interests.

The mother argues the court should not terminate her parental rights because of the closeness of the bond she shares with the children.[3]  *See id.* § 232.116(3)(c).   The mother maintains this, combined with the oldest child's objection to termination, warrants giving her additional time rather than ordering termination.  *See id.* § 232.116(3)(b) (providing the court need not terminate parental rights when a child over ten objects to the termination).  But the mother had additional time, and she did not use it well.  *See id.* § 232.104(2)(b).  The mother's substance abuse was more severe at the time of the termination trial than it was when the court gave her additional time in January 2019.  We do not question the mother and children love each other, but by the time of the termination trial, the children had been out of the mother's care nearly two years.  And this was not the first time the children were outside the mother's care.  The children were removed from her care previously during another child-in-need-of-assistance proceeding also based in part on the mother's drug use.  We do not take J.J.'s objection to the termination lightly, but reliable parenting and a stable home— which the mother is not now and may never be able to provide—are in J.J.'s best interests.  *See In re A.R.*, 932 N.W.2d 588, 592 (Iowa Ct. App. 2019) (affirming

---

[3] The mother combined this argument with her best-interests argument.  As this is not the proper analysis, we split the two.  *See, e.g., D.W.*, 791 N.W.2d at 706–07 (providing, "Termination of parental rights under chapter 232 follows a three-step analysis": determining whether a statutory ground has been established, applying the best-interests framework, and then considering any statutory exceptions set out in section 232.116(3) should preclude termination of parental rights).

termination of parent's rights where teenaged children objected, noting the children's wishes were relevant and could not be ignored but were not controlling); *In re A.S.*, No. 16-1984, 2017 WL 710562, at *3 (Iowa Ct. App. Feb. 22, 2017) (affirming termination over children's objection because "[o]ur overriding concern must be the long-term best interests of the children"); *In re J.S.*, No. 16-0112, 2016 WL 899857, at *3 (Iowa Ct. App. Mar. 9, 2016) ("The children's yearning for reunification does not tilt the balance away from termination.").

Finally, the mother challenges the district court's decision to modify placement of J.J. from the maternal grandmother to the Iowa Department of Human Services (DHS) at the time of the termination. The mother lacks standing to raise this issue. *See In re K.A.*, 516 N.W.2d 35, 38 (Iowa Ct. App. 1994) (concluding the parent had no right to participate in a placement hearing following termination because "[t]he termination of [the mother's] rights concerning these three children divest[ed] her of all privileges, duties, and powers with respect to the children."); *In re D.B.*, 483 N.W.2d 344, 346 (Iowa Ct. App. 1992) (refusing to consider mother's argument about where child should be placed following termination because the proper termination of the mother's rights divested her of "any legally recognizable interest she would have concerning the guardianship or custody" of the child).

We affirm the termination of the mother's parental rights.

**II. Father's Appeal.**

The father's parental rights to five-year-old J.C. were terminated under Iowa Code section 232.116(1)(e) and (f). The father purports to challenge the statutory grounds of paragraph (f), but he conceded both at trial and in his appellate brief

that J.C. could not be returned to his care at the time of the termination trial because of the father's ongoing incarceration.[4]  *See* Iowa Code § 232.116(1)(f)(4). And, at the time of the termination trial, J.C. was four years or older, was adjudicated a child in need of assistance, and had been out of the father's care at least twelve months.  *See id.* § 232.116(1)(f)(1)–(3).  Clear and convincing evidence supports the statutory grounds for termination.[5]

Insofar as the father challenges the reasonable efforts made by the State to reunify him with J.C.,[6] we are unpersuaded by the father's claims.  First, the father maintained that he was never told the phone number of the family safety, risk, and permanency (FSRP) worker he was to call to speak with J.C.  But the juvenile court did not credit this testimony.  *See D.W.*, 791 N.W.2d at 706 (noting

---

[4] The father claims, "[T]o say that he has been given a real opportunity to have his child returned to his care is a disservice."  But it is paragraph (e) that contains the requirement the State prove the parent "made no reasonable efforts to resume care of the child despite being given the opportunity to do so."  *See* Iowa Code § 232.116(1)(e)(3). Paragraph (f) includes no such requirement.  *See generally id.* § 232.116(1)(f).

[5] In his petition on appeal, the father concedes the child could not be returned to his care but "argues that the child could have been returned to the mother's care at the time of the hearing" and maintains the termination of his parental rights should be reversed on that ground.  The father cannot join in the mother's arguments or assert legal positions on her behalf.  *See In re K.R.*, 737 N.W.2d 321, 323 (Iowa Ct. App. 2007) ("[The father] did not have standing to assert that argument on [the mother's] behalf in an effort to ultimately gain a benefit for himself, that is, the reversal of the termination of *his* parental rights.").  Moreover, the father's claim his rights should not have been terminated because the mother could care for the child is inapposite, as the court could terminate the rights of just one of the parents.  *See, e.g., In re D.G.*, 704 N.W.2d 454, 459 (Iowa Ct. App. 2005) (noting one parent may not join another's appeal regarding termination because of "the general principle that in termination of parental rights proceedings each parent's parental rights are separate adjudications, both factually and legally").

[6] The father raises the issue of reasonable efforts within his argument about paragraph (e) but does not clearly address this argument under paragraph (f).

that even with de novo review, we give the juvenile court's findings of fact weight, especially in assessing the credibility of witnesses). Second, the social worker testified DHS sought to do more to facilitate contact between the father and J.C., but the penitentiary refused to approve a set time the FSRP worker could call the father for phone visits—requiring the father to call out instead. *See In re S.J.*, 620 N.W.2d 522, 525 (Iowa Ct. App. 2000) ("The services required to be supplied an incarcerated parent, as with any other parent, are only those that are reasonable under the circumstances."). And third, while DHS has an obligation to make reasonable efforts, "efforts toward reunification are not always a component" of that obligation. *In re L.T.*, 924 N.W.2d 521, 530 (Iowa 2019). "[T]he nature of that obligation depends on the best interests of the children." *Id.* Ultimately, complaints about the amount of phone contact between the father and J.C. is unrelated to the fact that J.C. could not be returned to his still incarcerated father. *See In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000) ("[T]he scope of the efforts by the DHS to reunify parent and child after removal impacts the burden of proving those elements of termination which require reunification efforts. The State must show reasonable efforts as part of its ultimate proof the child cannot be safely returned to the care of the parent." (citation omitted)).

The father argues it is not in the best interests of J.C. to terminate the father's rights because he loves J.C. But love and an interest in his son are not sufficient to meet J.C.'s needs. The child needs constant and reliable parenting and a safe and stable home. The father cannot provide those things. *See In re J.E.,* 723 N.W.2d 793, 800 (Iowa 2006) (Cady, J., specially concurring) ("A child's safety and the need for a permanent home are now the primary concerns when

determining a child's best interests."). Termination of the father's rights is in J.C.'s best interests.

The father argues the court need not terminate his rights because the parent-child bond precludes termination. *See* Iowa Code § 232.116(3)(c). It is the parent's burden to prove a permissive factor should be applied to save the parent-child relationship. *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018). The father has not established that an exception to termination is warranted here.

Finally, like the mother, the father argues that at the time of termination, the children should have been placed in the care of a family member rather than the custody of DHS for adoption. For the same reasons as the mother, the father cannot raise this issue now.

We affirm the termination of the father's parental rights to J.C.

**AFFIRMED ON BOTH APPEALS.**