# IN THE COURT OF APPEALS OF IOWA

No. 20-1005
Filed November 30, 2020

**IN THE INTEREST OF A.M. and K.M.,**
**Minor Children,**

**J.M., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Madison County, Brendan Greiner,

District Associate Judge.

A father appeals the termination of his parental rights.  **AFFIRMED.**

Jeremy M. Evans of Carr Law Firm, P.L.C., Des Moines, for appellant father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

Penny B. Reimer of Neighborhood Law Group of Iowa, P.C., West Des

Moines, attorney and guardian ad litem for minor children.

Considered by Mullins, P.J., and May and Schumacher, JJ.

**SCHUMACHER, Judge.**

A special agent with the Iowa Division of Criminal Investigation (DCI) interviewed the father of A.M. and K.M. on May 28, 2019, following the death of A.M. and K.M.'s mother the previous day. During the interview, the father reported to the agent that on May 27, 2019, after drinking for the majority of the day, he pried open a gun safe located at his parents' home and drove with a loaded shotgun to the home where the children's mother and her three daughters were staying. He entered the mother's bedroom and shot the mother.[1] All three girls, ages six years, four years, and two years, were in the home at the time of their mother's death.[2]

## I.   Standard of Review

The proper standard of review "for all termination decisions" isde novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (overruling prior cases applying an abuse-of-discretion standard of review to the question of whether termination is in the best interests of the children); *In re A.D.W.*, No. 12-1060, 2012 WL 3200891, at *2 (Iowa Ct. App. Aug. 8, 2012). We give deference to the factual findings of the juvenile court, especially those relating to witness credibility, but we are not bound by those determinations. *In re G.A.*, 826 N.W.2d 125, 127 (Iowa 2012). Our primary concern in termination proceedings is the best interests of the child. *In re L.T.*, 924 N.W.2d 521, 529 (Iowa 2019); *In re L.H.*, 949 N.W.2d 268, 270 (Iowa Ct. App. 2020).

---

[1]Along with this admission to the DCI agent, the father told the paternal grandmother, his sister, and his best friend that he had shot the mother.

[2] A.M. was born in 2012 and K.M. was born in 2014. S.M., born in 2016, is not the biological child of the father and is not at issue here.

## II.     Procedural History

A brief procedural history is beneficial to this appeal.  Following the death of the mother and the incarceration of the father, the State secured a removal order that placed the children in the temporary custody of the Iowa Department of Human Services (DHS).    The children were placed in the care of the maternal grandmother.  A child-in-need-of-assistance (CINA) petition was filed two days later on June 5, 2019.  When the father consented to the continued removal of the children from parental custody, the removal hearing set for June 6 was canceled. The children were adjudicated to be CINA by order filed June 20, 2019, pursuant to Iowa Code section 232.2 6(c)(2) and (n) (2019).  The court further found that the aid of the court was required.  Following adjudication, custody of A.M. and K.M. was placed with the maternal grandmother subject to the supervision of DHS.  S.M. also resided with the maternal grandmother and her sisters.  A motion for placement filed by the paternal grandparents came before the court for hearing simultaneously with a dispositional hearing.

On September 16, 2019, the district court filed a dispositional order denying the paternal grandparents' motion for placement.  Custody of A.M. and K.M. remained with the maternal grandmother, subject to the supervision of DHS.  Both the maternal grandmother and the paternal grandparents were allowed to intervene as parties at different times in the underlying CINA case.  Following a permanency hearing, the court directed the State to initiate termination proceedings between the father and A.M. and K.M.

A termination hearing was held on July 10, 2020, at which time the court, without objection, took judicial notice of the underlying CINA files and the father's

pending criminal matter in FECR109148, including the trial information and minutes of evidence. Also included in the admitted evidence were the transcripts of the combined dispositional/placement hearing, a dispositional review hearing, and the permanency hearing. Following the termination hearing, the court entered an order terminating the parental rights of the father as to A.M. and K.M. pursuant to Iowa Code section 232.116(1)(f) (2020).[3]

The father now appeals. He does not contest the statutory ground relied on by the district court for termination. Thus, we need not address the ground relied upon by the district court. *See P.L.*, 778 N.W.2d at 40. Rather, the father argues the district court erred in not granting guardianship of the children to the paternal grandparents and further argues DHS failed to make reasonable efforts for reunification purposes. He does not argue termination is not in the children's best interest, but rather, contends placement with the maternal grandmother was contrary to the children's best interests. We address each argument in turn.

## III.    Post-Termination Placement and Exception to Termination

The father argues, "The trial court erred when it ordered the children to remain in the custody of their maternal grandparents." With respect to this argument, we first note that following the termination, the district court placed custody and guardianship of A.M. and K.M. with DHS, rather than the maternal grandmother. Secondly, we question the father's standing to raise this issue. *See In re K.A.*, 516 N.W.2d 35, 38 (Iowa Ct. App. 1994) (concluding the parent had no

---

[3] On remand from the supreme court, the district court amended the termination order to reflect that following entry of the termination of parental rights, custody and guardianship of the children was placed with DHS.

right to participate in a placement hearing following termination because "[t]he termination of [the mother's] rights concerning these three children divest[ed] her of all privileges, duties, and powers with respect to the children."); *In re D.B.*, 483 N.W.2d 344, 346 (Iowa Ct. App. 1992) (refusing to consider mother's argument about where child should be placed following termination because the proper termination of the mother's rights divested her of "any legally recognizable interest she would have concerning the guardianship or custody" of the child); *In re J.C.*, No. 19-1985, 2020 WL 1049840, at *2 (Iowa Ct. App. Mar. 4, 2020).

The district court did not establish guardianship in either the maternal grandmother or the paternal grandparents. However, the court had the authority to place guardianship with a relative under Iowa Code section 232.117(3). Here, the court was presented with two homes, that of the maternal grandmother and that of the paternal grandparents. The evidence presented at the hearing indicated both families could provide a home for the children. Following the death of the mother, the children have resided continuously with the maternal grandmother. Both DHS and the guardian ad litem advocated for as little disruption as possible for the children. We find the district court acted in the children's best interest in placing custody and guardianship with DHS for determination of a pre-adoptive placement.

To the extent the father argues an exception to termination should apply pursuant to Iowa Code section 232.116(3)(c), we find he falls short of his burden to demonstrate that an exception should be applied to prevent termination. Guardianships are not "legally preferable" alternatives to termination. *In re A.S.*, 906 N.W.2d 467, 477 (Iowa 2018) (quoting *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct.

App. 2017)). We have found a guardianship appropriate when "no functional difference" existed between guardianship and termination based on a child's placement with his grandmother. *See B.T.*, 894 N.W.2d at 33 (holding ten-year-old's placement with grandmother as his guardian was no less permanent than requiring grandmother to adopt child). Here, the children are very young and have struggled a great deal since the death of their mother. The maternal grandmother and the paternal grandparents have litigated extensively in juvenile court as to the appropriate placement for the girls, which has increased the children's anxiety about their immediate and future placement. A termination of parental rights rather than a guardianship will provide the children desperately needed permanency following a year and a half of tumultuous litigation and the loss of their mother.

## IV. Reasonable Efforts

The Code requires DHS to make reasonable efforts to return children to their home—consistent with the children's best interests. Iowa Code § 232.102(6)(b). "Reasonable efforts" include services offered to eliminate the need for removal or to make it possible for the children to return safely to the family home. *Id.* The duty to make reasonable efforts is not "a strict substantive requirement of termination," but the extent of the measures taken by DHS "impacts the burden of proving those elements of termination which require reunification efforts." *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000); *In re K.C.*, No. 18-1249, 2019 WL 325863, at *2 (Iowa Ct. App. Jan. 23, 2019).

While not set out as a separate issue, the father appears to also argue a lack of reasonable efforts prevented reunification, specifically a lack of visitation with his daughters since his incarceration. To the extent he makes this argument

on appeal, he failed to raise the issue of reasonable efforts at the district court level.  While he alleges he preserved this issue by contesting the termination petition and filing a notice of appeal, filing a notice of appeal is insufficient to preserve error for review.  *See* Thomas A. Mayes & Anuradha Vaitheswaran, *Error Preservation in Civil Appeals in Iowa: Perspectives on Present Practice*, 55 Drake L. Rev. 39, 48 (2006) ("While this is a common statement in briefs, it is erroneous, for the notice of appeal has nothing to do with error preservation." (footnote omitted)); *In re K.W.*, No. 15-0790, 2015 WL 4642786, at *1 (Iowa Ct. App. Aug. 5, 2015).

As noted by the DHS worker, since removal, the father has not inquired about the girls' well-being or asked for contact.  Although DHS is required to make reasonable efforts, "[i]n general, if a parent fails to request other services at the proper time, the parent waives the issue and may not later challenge it at the termination proceeding."  *In re L.M.*, 904 N.W.2d 835, 840 (Iowa 2017).  Here, the father did not raise the issue of visitation or make a request for other services to the district court, and as such, the issue is not preserved for appellate review.

> [I]t is fundamentally unfair to fault the trial court for failing to rule correctly on an issue it was never given the opportunity to consider.  Furthermore, it is unfair to allow a party to choose to remain silent in the trial court in the face of error, taking a chance on a favorable outcome, and subsequently assert error on appeal if the outcome in the trial court is unfavorable.

*State v. Pickett*, 671 N.W.2d 866, 869 (Iowa 2003).  Finding the father's argument unpreserved, we decline to address this issue.

## V.    Best Interests

The father does not argue termination of his parental rights is not in the girls' best interest.  Rather, his best-interest argument again lands on placement of A.M. and K.M., asserting that placement with the maternal grandmother is not in their best interests.  Iowa Code section 232.117(3) directs the juvenile court to transfer a child's guardianship and custody to one of the following upon termination: (1) DHS; (2) a placement agency or other suitable entity licensed to provide care; or (3) "a parent who does not have physical care of the child, other relative, or other suitable person."  *In re J.H.*, No. 20-0081, 2020 WL 2988759, at *2 n.2 (Iowa Ct. App. June 3, 2020).

We reject the father's argument.  Following termination, the district court did not direct placement at the maternal grandmother's home.  Rather, custody and guardianship were placed with DHS.  We have previously determined this to be in the children's best interest.  As always, our primary concern is the best interest of the children.  *See In re D.S.*, 563 N.W.2d 12, 14 (Iowa Ct. App. 1997); *In re C.B.*, No. 11-1196, 2011 WL 5389707, at *1 (Iowa Ct. App. Nov. 9, 2011).

Even if we interpreted the father's argument to allege termination is not in the best interest of the children, this would not be a close call.  The father has been incarcerated since May 27, 2019, after he confessed to killing the children's mother.  His criminal trial has been set for the spring of 2021.  In the lapse of time since the father's confession to the murder of the children's mother, A.M. and K.M. have endured a great deal.  Both A.M. and K.M. attend weekly mental-health therapy and have been involved in grief counseling.

A.M., in particular, was unable to manage her emotions and control her anger after her mother's death. Prior to her mother's death, A.M. was described as a child that took care of everybody else, "kind of a mother hen to classmates and peers." After her mother's death, she demonstrated significant behavior and emotional concerns in school, necessitating reassignment to the Four Oaks Classroom. While she is improving, the evidence demonstrates the fragility of the children and the importance of limiting further disruptions in their lives. The maternal grandmother has been caring for A.M. and K.M. since their mother's death and is the guardian of S.M., the girls' half-sister to whom they are bonded.[4] We find termination of the father's parental rights to be in A.M.'s and K.M.'s best interest.

## VI.  Conclusion

We reject the father's request for guardianship as a permanency option and find his reasonable-efforts argument to be unpreserved. We find termination is in the best interest of A.M. and K.M., and that placing custody and guardianship with DHS for a pre-adoptive placement decision is in the children's best interest. Accordingly, we affirm the district court.

**AFFIRMED.**

---

[4] At the permanency hearing, the biological father of S.M. consented to a guardianship, which allowed him to remain involved with his daughter. Through counsel, he expressed his belief it was in his daughter's best interest to remain with her siblings.