**In the Interest of B.K.J., JR., and D.G.J., Minor Children,**

**B.J., Sr., Father, Appellant.**

No. 91–1113.

Court of Appeals of Iowa.

Feb. 25, 1992.

R. Allen Corzine of Pieters, Pieters & Corzine, Waterloo, for appellant.

Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Sp. Asst. Atty. Gen., and Kathrine S. Miller–Todd, Asst. Atty. Gen., for appellee State.

Patricia McGivern of Clark, Butler, Walsh & McGivern, Waterloo, for children.

Marjorie K. Patin, Waterloo, for mother.

Heard by DONIELSON, P.J., and SCHLEGEL and SACKETT, JJ.

DONIELSON, Presiding Judge.

This appeal arises from the Black Hawk County Juvenile Court's decision affirming the juvenile court referee's order terminating a mother and father's parental rights to their two children. The father has appealed the judgment. The mother, having acquiesced to the termination of her parental rights, has joined with the State and the guardian ad litem as an appellee on appeal. On our review, we affirm the judgment of the juvenile court.

B.K.J., Sr., the appellant/father in this action, is an angry and violent man. At twenty-five years old, he has already spent many years leading the type of dismal existence which, for most, is merely the subject of an occasional nightmare. There must be no mistake, however, that much of B.K.J., Sr.'s depressing life has been the result of his own making. Surely, he has caused both himself and those around him a great deal of anguish.

B.K.J., Sr. has spent the majority of the last six years under the control of alcohol and the correctional system. He is a chronic substance abuser who has committed various sundry offenses including drunk driving, assault, public intoxication, theft, criminal trespass, criminal mischief, and burglary. While not otherwise engaged, he has found the time and energy to repeatedly beat his girlfriend, M.J., who is the mother of the two children here involved.

B.K.J., Sr. has not, however, ever harmed his children. Indeed, it is the children's mother, M.J., who has brutalized them, beating them, burning them, and breaking their bones. B.K.J., Sr. claims to sincerely care for his children and asserts that he merely needs more time and services to adequately develop his parenting skills.

B.K.J., Sr. began living with M.J. in 1987. As a result of that relationship, two children were born; B.K.J., Jr. in March 1988, and D.G.J. in April 1987. Due to parole violations, B.K.J., Sr. was incarcerated from May 1989 until April 1990 on his suspended sentence for previous burglary and theft charges. During this period, both children were adjudicated children in need of assistance based on several incidents of physical abuse by the mother, and

both children were removed from the mother's home.

A dispositional hearing was held in March 1990. At this time, the father was granted supervised visitation, and both parents were required to participate in parenting classes. After the father's release from jail, he and the mother attempted to reconcile, but the attempt failed. The father, having been assessed to be chemically dependent on alcohol, was placed on intensive supervised parole in December 1990.

In January 1991, a petition to terminate the parental rights of the mother and father of the children was filed. The petition noted the mother's abuse of the children as well as the failure of both parents to participate in family and parenting services. The father's failure to obtain mental health services and his physical abuse of the mother were also noted. The hearing was set for April, and in March 1991, the father entered a thirty-day inpatient treatment program for substance abuse. The father filed a motion for continuance of the hearing and for a parent/child evaluation, but his motion was denied by the court on March 29, 1991.

The father completed treatment on April 9, and the hearing was held on April 10, 11, and 19. Prior to the hearing, the mother consented to termination of her parental rights. Following the hearing, the juvenile court terminated the parental rights of both parties. The father has filed this appeal.

■ Appellate review of termination proceedings is de novo. *In re W.G.*, 349 N.W.2d 487, 491 (Iowa 1984), *cert. denied*, 469 U.S. 1222, 105 S.Ct. 1212, 84 L.Ed.2d 353 (1985). We give weight to the juvenile court's factual findings, especially when considering the credibility of witnesses, but we are not bound by those determinations. *Id.* at 491–92.

Central to a determination of this nature are the best interest of the child. In this connection we look to the child's long range as well as immediate interest. Hence, we necessarily consider what the future likely holds for the child if returned to his or her parents. Insight for this determination can be gained from evidence of the parent's past performance, for that performance may be indicative of the quality of the future care that parent is capable of providing.

*In re T.D.C.*, 336 N.W.2d 738, 740–41 (Iowa 1983) (quoting *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981)) (citations omitted).

■ I. *Sufficiency of Evidence.* The juvenile court ordered termination of the father's parental rights pursuant to Iowa Code section 232.116(1)(g) (Supp.1991). The father concedes that all the statutory grounds have been met except for subsection (4) which necessitates a finding that the child cannot be returned to the custody of the parent at the time of the hearing. A child cannot be returned to the custody of the parent, within the meaning of section 232.116(1)(g), when any one of the grounds listed in section 232.2(6) (child in need of assistance) can be proven by clear and convincing evidence. *See, e.g., In the Interest of A.M.S.*, 419 N.W.2d 723, 725 (Iowa 1988). The father argues the State has not proven this requirement by clear and convincing evidence. We disagree.

■ There is no question that the record contains clear and convincing evidence that if the children were returned to their father's custody at the time of the hearing, they would be children in need of assistance under Iowa Code section 232.2(6)(n) (Supp.1991) (child whose parent's alcohol abuse results in the child not receiving adequate care). At the time of the termination hearing, the father was not following the recommendations regarding treatment of his substance abuse. He had not participated in out-patient counseling, and he had not completed parenting classes. He was in a chaotic relationship with a girlfriend. He was unemployed; on intensive, supervised parole; and was being evicted from his apartment. Even the father testified he needed four to six more months to stabilize.

II. *Adequacy of Services Provided.* The father also argues that he was not provided adequate services to prevent the need for termination of his parental rights.

Again, we disagree. The Department of Human Services did not ignore the father's needs.

■ Both children were separately adjudicated to be children in need of assistance, but by the time the termination petition was filed on January 18, 1991, both children had been out of the home for over twelve months. This led to a sense of urgency. *See In the Interest of A.C.*, 415 N.W.2d 609, 614 (Iowa 1987), *cert. denied*, 485 U.S. 1008, 108 S.Ct. 1474, 99 L.Ed.2d 702 (1987). During this twelve-month period, the DHS offered the father parenting, psychological, family, and substance abuse services. He squandered these opportunities to turn his life around and improve his parenting skills. While the law demands a full measure of patience with a troubled parent who attempts to remedy a lack of parenting skills, *Id.* at 613, a child need not endlessly await the maturity of his or her natural parent. *T.D.C.*, 336 N.W.2d at 744. A child should not be forced to endlessly suffer the parentless limbo of foster care. *Long v. Long*, 255 N.W.2d 140, 146 (Iowa 1977).

There are a number of stern realities faced by a juvenile judge in any case of this kind. Among the most important is the relentless passage of precious time. The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems. Neither will childhood await the wanderings of judicial process. The child will continue to grow, either in bad or unsettled conditions or in the improved and permanent shelter which ideally, at least, follows the conclusion of a juvenile proceeding.

*A.C.*, 415 N.W.2d at 613.

■ III. *Motion for Continuance.* Finally, the father contends the juvenile court abused its discretion in denying his motion for a continuance and for a parent/child evaluation. At the time of the father's motion, the children had been out of the home for over thirteen months. The father had been aware for years that he needed treatment for alcoholism. B.K.J., Sr. had completely failed to avail himself of the services offered to him earlier. We find no abuse of the juvenile court's discretion.

The costs of this appeal are taxed to the father, B.K.J., Sr.

For all the reasons stated, the judgment of the juvenile court is affirmed.

AFFIRMED.

SCHLEGEL, J., concurs.

SACKETT, J., specially concurs.

SACKETT, Judge (specially concurring).

I concur with the majority that there is clear and convincing evidence supporting the allegations of the State's petition to terminate this father's parental rights. Without question, this father has engaged in behavior that has been harmful to his children.

However, I cannot help but recognize the father was still a teenager when the first child was born. He has had a difficult life. The record clearly reflects he loves his children and has made attempts to gain the stability and maturity necessary to parent the children. Unfortunately, he has not been able to do so. He contends he has not been provided adequate services to prevent the need for termination. I agree with the majority that his needs were not ignored. But I also recognize the State, despite the expenditure of considerable resources, has not been able to provide services of a kind that the father was able to utilize to correct his problems. This obviously was in a large part the father's fault, but when offered services fail to accomplish their intended goals, it is fair to ask why, so that maybe next time the services can be more responsive.

We must continue to assess ways to make services more responsible. There are a large number of children in this state whose parental rights have been terminated who have not been adopted. Termination of these rights does not carry with it any guarantee the child will go to a stable home with loving parents. While the termination has severed the children from an inadequate parent, it has also severed them

from a loving parent with whom they are biologically tied. The children who are four and five years old know their father and will suffer from the biological bond being severed and from the fact there never will be a solution to their problems with their father.

The State's inability to place in adoptive homes the large number of children whose parental rights are being terminated, makes a strong argument to continue to work harder to help biological parents parent.