In the Interest of K.A., J.A.S., L.S., Minor Children.

C.A.-S., Mother, Appellant.

No. 93-1198.

Court of Appeals of Iowa.

Feb. 25, 1994.

Christine L. Crilley of Ackley, Kopecky & Kingery, Cedar Rapids, for appellant.

Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Sp. Asst. Atty. Gen., and Kathrine S. Miller–Todd, Asst. Atty. Gen., for appellee State.

Carolyn J. Beyer, of Wenzel, Piersall & Harms, P.C., Cedar Rapids, for appellees minor children.

Michael W. Fay of the Fay Law Office, Cedar Rapids, for father of K.A.

Robert Kimm, Cedar Rapids, for father of J.A.S. and L.S.

Considered by HAYDEN, P.J., HABHAB, J., and PETERSON, Senior Judge.*

HAYDEN, Presiding Judge.

The natural mother, Connie, appeals the termination of her parental rights to her three minor children: Kassandra, born March 24, 1984; Joshua, born March 22, 1985; and Lacey, born March 30, 1989. Terry is the biological father of Kassandra. Earl is the adoptive father of Joshua and the biological father of Lacey.

The Iowa Department of Human Services (DHS) became involved with Connie, Earl, and the three children in September 1991. At that time a physical abuse report was founded on Kassandra and Joshua. The report named Earl as the perpetrator of the physical abuse. A denial of critical care of all three children and a physical abuse report with respect to Kassandra were founded against Connie. The denial of critical care report was based on inadequate supervision. On November 25, 1991, an emergency removal order was issued, and the children were placed in foster care. The juvenile court confirmed the removal on December 9, 1991, and cautioned Connie to work toward reunification with her children or the court would

---

* Senior judge from the 1st judicial district serving on this court by order of the Iowa Supreme Court.

consider the request of Terry's family that Kassandra be placed with them.

On January 29, 1992, the three children were adjudicated in need of assistance (CINA) pursuant to Iowa Code sections 232.-2(6)(b) and (c)(2). The children were placed in the custody of DHS for purpose of foster care placement.

On March 19 and April 6, 1992, dispositional hearings were held. Kassandra was placed in the custody of her paternal grandparents, and Terry was granted unsupervised visitation. Joshua and Lacey remained in foster care. Connie was granted supervised visitation with the children. The case plan called for Connie to establish a stable residence and visible means of support, show money management and budgeting skills, complete a substance abuse evaluation and follow through with any recommendations, address issues of her abusive relationships with men, and maintain regular contact with her children. The court noted Kassandra's placement was effective for approximately ninety days and if Connie did not work in earnest on the case plan, the court would consider placing Kassandra in Terry's home on a long-term basis.

On June 11, 1992, the juvenile court reviewed its dispositional orders. The court noted Connie had recently obtained employment and secured housing for July. She, however, had failed to follow through on substance abuse recommendations or meet with her therapist and had only consistently visited the children for the previous couple of weeks. The court ordered Joshua and Lacey remain in foster care and ordered Kassandra be placed with Terry under the protective supervision of DHS. The court reviewed the case in September and December and maintained these placements.

The State filed a petition to terminate the parental rights of Connie and Earl on February 24, 1993. At the pretrial conference Earl consented to the termination of his parental rights relating to Joshua and Lacey.

On April 26, 1993, a termination hearing was held. Connie did not appear personally, and her motion to continue was denied. DHS and Lutheran Social Services workers testified Connie had made some progress in relation to the case plan but had not achieved overall stability or addressed issues of her alcohol abuse and abusive relationships with men. The hearing could not be completed on that date. On May 10, 1993, Connie moved to continue the hearing, asserting she was presently undergoing inpatient alcohol treatment. The motion was orally reasserted at the May 14 hearing, but was denied. The juvenile court found Connie's veracity questionable and concluded a continuance was not in the best interests of the children.

Connie did attend the afternoon session of the May 14 hearing and testified concerning her ongoing treatment and her hope the court would give her another chance to reclaim her children. The court reserved ruling on Connie's motion to leave the record open for further evidence upon the completion of her treatment.

On July 9, 1993, the juvenile court entered an order terminating Connie's parental rights to the three children. The court also overruled Connie's motion to leave the record open and scheduling a hearing on issues of placement. Connie's motion to enlarge the juvenile court's findings was overruled on July 27, 1993. A placement hearing was scheduled for August 12, 1993. On that same date Connie filed a notice of appeal and moved to continue the placement hearing until the completion of the appeal. The juvenile court overruled her motion to continue the placement hearing, found Connie had no standing to challenge the placement, and concluded Connie's notice of appeal was filed prematurely. Connie filed a second notice of appeal on September 9, 1993.

Our review of a termination proceeding is de novo. Iowa R.App.P. 4; *In re T.A.L.*, 505 N.W.2d 480, 482 (Iowa 1993) (citations omitted). We give weight to the fact findings of the juvenile court, especially with respect to the credibility of witnesses. *In re D.A., Jr.*, 506 N.W.2d 478, 479 (Iowa App.1993) (citation omitted).

■ I. Connie has shown an inconsistent commitment to reunification with her family, despite the numerous services she was offered by DHS. There have been short peri-

ods of time in which Connie has shown interest in using services offered by DHS and reaching goals set forth in the case plan. However, she has attended visitations inconsistently, made inappropriate comments during visitations, brought unexpected individuals to visitations, failed to arrive at the hospital on time for Joshua's scheduled surgery so his surgery had to be court ordered, failed to meet with a family therapist for one month, had inconsistent contact with case workers, and failed to attend appointments she had scheduled with case workers.

DHS identified a substance abuse problem and included inpatient substance abuse treatment for Connie in the case plan objectives. Connie, however, refused to begin such treatment for months. Finally at a review hearing held on December 14, 1992, Connie's counsel stated Connie intended to begin inpatient substance abuse treatment as soon as possible. The court cautioned Connie it expected her to make "very serious progress" within the next reporting period. Arrangements were made for Connie to begin treatment on December 26, 1992. Connie, however, canceled. Another date was arranged, but Connie again backed out. Between December 1992 and April 1993 numerous attempts were made to convince Connie to start substance abuse treatment. Connie continued to be uncooperative. At one point she admitted she was avoiding treatment. Connie kept claiming she did not begin treatment because she did not want to face other issues such as child abuse and domestic violence. Connie was repeatedly scheduled for substance abuse treatment, but she refused to enter treatment until after the termination hearing had begun. The termination proceeding in this case occurred on April 26, and May 14, 1993. On April 28, 1993, Connie finally began inpatient substance abuse treatment. Connie's refusal to enter treatment continued past the first part of the termination proceeding.

At the December 14 hearing Connie admitted she had not attended visitation with her children for two months.

Q: Why did you go almost two months without seeing your children? A: Oh, a lot of other things come up and—I don't know I just wasn't facing a lot of things.

One of the initial goals of the case plan for this family was to encourage and assist Connie in establishing a permanent residence and employment. Prior to entering treatment Connie had continued to jump from one residence to another and tended to move into the residence of her most recent boyfriend. Throughout this series of moves, Connie continued to involve herself in abusive relationships. She has never lived independently. Her actions can only create more instability for her children.

Our supreme court has stated: "Children simply cannot wait for responsible parenting. Parenting cannot be turned off and on like a spigot. It must be constant, responsible, and reliable." *In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990). A child need not endlessly await the maturity of his or her natural parent. *In re T.D.C.*, 336 N.W.2d 738, 744 (Iowa 1983).

Concerns about domestic violence, codependency, and substance abuse have not been sufficiently addressed. Connie has failed to take responsibility for leaving her children with inappropriate caretakers. Despite several warnings from DHS Connie has failed to recognize the seriousness of the family situation. The requirements for termination under Iowa Code section 232.-116(1)(e) have been satisfied.

II. Connie contends the termination of her parental rights is in error because the trial court failed to grant her continuance so she could be present at the termination hearing and be available to provide information on her progress on the case plan and failed to keep open the record to see if she completed her alcohol treatment, acquired housing, and continued visitation. The children involved in this termination proceeding cannot spare more time waiting for their mother to achieve goals of the case plan which were set forth two years ago. *See In re T.D.H.*, 344 N.W.2d 268, 270 (Iowa App.1983). We may look at a parent's past performance in determining whether a continuance of a termination proceedings should be granted. *Id.* We determine the juvenile court did not abuse its discretion in refusing to grant a

continuance. *See In re B.K.J., Jr.*, 483 N.W.2d 608, 611 (Iowa App.1992). We affirm on this issue.

■ III. Connie contends the juvenile court erred in refusing to allow her to participate in the placement hearing held in August 1993. The termination of Connie's parental rights concerning these three children divests her of all privileges, duties, and powers with respect to the children. Iowa Code § 232.2(56) (1993). Connie could not have been aggrieved by the placement order. The general rule is a party who is not aggrieved by a judgment or other final ruling has no right to appeal. *In re D.B.*, 483 N.W.2d 344, 346 (Iowa App.1992) (citation omitted). We affirm the juvenile court on this issue.

We affirm the termination of Connie's parental rights to Kassandra, Joshua, and Lacey pursuant to Iowa Code section 232.-116(1)(e) (1993).

**AFFIRMED.**