# IN THE COURT OF APPEALS OF IOWA

No. 19-1200
Filed October 23, 2019

**IN THE INTEREST OF R.H.,**
**Minor Child,**

**C.H., Mother,**
        Appellant.

_____

Appeal from the Iowa District Court for Pottawattamie County, Charles D. Fagan, District Associate Judge.

The mother appeals the termination of her parental rights to her child. **AFFIRMED.**

Kyle J. McGinn of McGinn, Springer & Noethe, Council Bluffs, for appellant mother.

Thomas J. Miller, Attorney General, and Charles K. Phillips, Assistant Attorney General, for appellee State.

Sara Benson of Benson Law, P.C., Council Bluffs, attorney and guardian ad litem for minor child.

Considered by Potterfield, P.J., Greer, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**BLANE, Senior Judge.**

The mother appeals the termination of her parental rights to her child, R.H.[1] She disputes some of the statutory grounds relied upon by the juvenile court, maintains termination is not in the child's best interests, argues she should be given more time to work toward reunification, and challenges the juvenile court's denial of her request to modify disposition to place R.H. in the maternal grandmother's care.

**I. Background Facts and Proceedings.**

R.H. tested positive for cannabinoids, methamphetamine, and amphetamines at his birth in July 2018. The mother admitted to using both marijuana and methamphetamine during her pregnancy, and R.H. was immediately removed from her care the day after birth. At that time, he was placed in the custody of the maternal grandmother. In the child-in-need-of-assistance proceedings, the court required the mother to undergo substance-abuse evaluation and treatment.

In early October, the mother began what was to be a six-week residential substance-abuse treatment program. Following a dispositional hearing soon thereafter, the court adopted a permanency goal of R.H. joining the mother at the treatment facility after she completed the first thirty days. The court ordered that R.H. would "be placed in the care, custody, and control of his mother" subject to the supervision of the Iowa Department of Human Services (DHS) and would "remain in her care unless she leaves treatment prior to being successfully

---

[1] The father's parental rights were also terminated. He does not appeal.

discharged." In the event the mother left treatment prior to successfully completing it, the custody of R.H. would revert back to DHS.

R.H. joined the mother at the residential treatment facility on October 30. Two weeks later, the social worker for the family met with the mother to discuss her lack of engagement in treatment. The mother maintained her several positive sweat-patch tests were the result of being around her boyfriend and the maternal grandmother while they used methamphetamine—not her own use. In response, the mother was told the grandmother would not be allowed back in the residential treatment center for visits until the grandmother proved her sobriety. The mother became upset, told the social worker to place R.H. in foster care, and left treatment.

R.H. was placed in foster care that day, November 13, and remained there until he was placed in the home of his maternal aunt on December 8. R.H. continued to live with this maternal aunt at the time of the termination hearing.

When R.H. was placed in foster care, the maternal grandmother contacted DHS to ask that R.H. be returned to her custody. The social worker informed her she needed to complete a drug test to establish her sobriety because the mother reported the grandmother was using methamphetamine. The grandmother, though upset, stated she would complete a test. However, the next day, DHS received a text stating the grandmother decided not to be tested.

In December, the mother filed a motion to modify the dispositional order, asking the court to order R.H. be returned to the care and custody of the grandmother. In the motion, the mother maintained the grandmother would comply with preliminary and ongoing drug screening to demonstrate sobriety. Following a

hearing, the court denied the motion, noting the mother failed to offer any evidence in support of it.

The termination-of-parental-rights hearing took place in June 2019. Since R.H.'s birth and removal, the mother had attempted a few different substance-abuse treatment programs, but she did not successfully complete any of the programs. She consistently attended the ordered drug tests. She provided "clean" tests in October, November, and one in December 2018—which tracked the time she was in residential treatment and shortly thereafter—but otherwise tested positive for methamphetamine in the months leading up to the termination hearing. She attempted an outpatient treatment program but continued her use and attended two sessions while under the influence. At the hearing, the mother admitted using methamphetamine as recently as a couple weeks earlier. She believed she could achieve sobriety if she entered another residential treatment program. She had submitted applications to a few, one of which would allow her to attend with R.H., but she had not at the time of the hearing been accepted into any of the programs.

The juvenile court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(b), (e), (h), and (*l*) (2019). She appeals.

**II. Standard of Review.**

We review termination proceedings de novo. *In re D.S.*, 791 N.W.2d 703, 706 (Iowa 2010). While termination proceedings generally follow a three-step framework, we need not consider steps that the parent does not dispute on appeal. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

**III. Discussion.**

The juvenile court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(b), (e), (h), and (*l*). The mother does not dispute the statutory grounds of subsection (h)[2] were proved by clear and convincing evidence, so we affirm on that ground. *See id.* (declining to review juvenile court's ruling as to the statutory grounds when parent did not dispute the grounds were met); *see also In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016) (providing the reviewing court is to determine whether "any ground for termination under section 232.116(1) has been established").

The mother argues termination of her parental rights is not in R.H.'s best interests. In considering the child's best interests, we are required to use the best-interest framework established in section 232.116(2). *P.L.*, 778 N.W.2d at 37. It provides, "The court shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). It also includes the considerations of "whether the child has become integrated into the foster family" and "whether the foster family is able and willing to permanently integrate the child into the foster family." *Id.* § 232.116(2)(b).

---

[2] Pursuant to section 232.116(1)(h), the juvenile court may terminate when:
 (1) The child is three years of age or younger.
 (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
 (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
 (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

R.H. was nearly one year old at the time of the termination hearing and had spent only two weeks of his life in his mother's care—while she was in inpatient treatment. He has always had to rely on others to meet his needs. While the mother hoped to achieve sobriety after more substance-abuse treatment, she was not yet prepared to take on the full-time responsibility of parenting. Moreover, she did not have a stable home or employment. According to the testimony of the social worker, R.H. is bonded with the maternal aunt who is willing to adopt him in order to establish permanency for him. Termination of the mother's parental rights is in R.H.'s best interests.

Alternatively, the mother maintains she should be given more time to work toward reunification with R.H. "In order to continue placement for six months, [Iowa Code section 232.104(2)(b)] requires the court to make a determination the need for removal will no longer exist at the end of the extension." *In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005). We agree with the juvenile court; the mother's ability to have R.H. in her care in six months is too uncertain to delay permanency. The mother hoped to be admitted into a residential treatment program that would allow R.H. to live with her but had not heard back from the facility since submitting her application, and it is not clear when—or if—a bed will be available for her. We hope the mother engages in further treatment and is able to achieve sobriety. But her response to treatment thus far forces us to consider her ability to take over R.H.'s full-time care with skepticism. *See In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997) ("[W]e look to the parents' past performance because it may indicate the quality of care the parent is capable of providing in the future.").

Finally, the mother attempts to raise a challenge to the juvenile court's denial of her December 2018 motion to modify the dispositional order, asking the court to return the care and custody of R.H. to the maternal grandmother. The mother's notice of appeal did not state she was challenging the ruling on her motion to modify the dispositional order. And her chance to appeal that ruling has passed now that her parental rights have been terminated. *See, e.g.*, *In re K.A.*, 516 N.W.2d 35, 36, 38 (Iowa Ct. App. 1994) (affirming juvenile court decision that parent whose parental rights had been terminated had no standing to challenge placement); *In re D.B.*, 483 N.W.2d 344, 346 (Iowa Ct. App. 1992) (noting the mother whose rights had been terminated could not challenge the placement of the child afterward because termination "divests her of all privileges, duties and power with respect to the child" and meant she had no "legally recognizable interest . . . concerning the guardianship or custody of" the child). Even if the mother was allowed to challenge this ruling, she has failed to provide any record of the hearing at which the motion was considered. *See In re F.W.S.*, 698 N.W.2d 134, 135 (Iowa 2005) ("It is the appellant's duty to provide a record on appeal affirmatively disclosing the alleged error relied upon."). We do not consider this issue further.

For all the reasons stated herein, we affirm the termination of the mother's parental rights.

**AFFIRMED.**