# IN THE COURT OF APPEALS OF IOWA

No. 22-0331
Filed April 27, 2022

**IN THE INTEREST OF C.M. and J.M.,**
**Minor Children,**

**A.M., Mother,**
        Appellant.
_____


Appeal from the Iowa District Court for Tama County, Casey D. Jones, District Associate Judge.


The mother appeals the termination of her parental rights to two of her children. **AFFIRMED.**


Melissa A. Nine of Nine Law Office, Marshalltown, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Deborah M. Skelton, Walford, attorney and guardian ad litem for minor children.


Considered by Tabor, P.J., Ahlers, J., and Potterfield, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2022).

**POTTERFIELD, Senior Judge.**

The juvenile court terminated the mother's parental rights to two of her children,[1] C.M. and J.M., born in 2013 and 2014 respectively.[2]  On appeal, the mother argues the juvenile court wrongly denied her motions to continue the termination trial.  Alternatively, she argues termination of her rights is not in the children's best interests and a permissive factor weighs against termination.

**I. Background Facts and Proceedings.**

The Iowa Department of Human Services (DHS) has been involved with this family off and on since 2013.  The current involvement began in November 2019,[3] upon allegations the mother was physically abusing J.M.  A short time later, DHS received a report the mother may have left C.M. and J.M.—then six and five years old—alone without adult supervision.  There were indicators the mother was struggling with addiction; she was asked to undergo a drug test but did not do it.

The children were removed from parental custody in April 2020 and remained outside of the mother's care at the time of the termination hearing in January 2022.

---

[1] The mother and father had five children.  The oldest reached the age of majority after the Iowa Department of Human Services (DHS) became involved with the family again in November 2019 but before the termination trial in January 2022.  The next two in age were seventeen and fifteen at the time of the termination trial.  There were open child-in-need-of-assistance (CINA) cases on both teenagers, and they remained outside of parental care.  According to the social worker, the teenagers were not included in the State's petition to terminate parental rights (TPR) due to "their age, and also their disagreement or objection to TPR."

[2] The rights of the children's father were also terminated.  The father filed a notice of appeal, but he did not sign it.  And he failed to file an amended notice of appeal that contained his signature after our supreme court ordered it.  As a result, his appeal was dismissed before the case was transferred to us.

[3] The father was incarcerated at this time.

The mother attended inpatient substance-abuse treatment for fewer than thirty days in April and May 2021, but she quickly relapsed on methamphetamine—testing positive for the substance on June 3, 2021. In August, the mother admitted to using methamphetamine. At the termination trial on January 25, 2022, she gave her last date of use as January 14.

The mother entered inpatient treatment a second time on January 18—one week before the termination trial was scheduled to take place. On January 23, she filed a written motion to continue the termination trial. The court denied the motion. The mother was not present at the beginning of trial on January 25, and her attorney orally moved to continue trial. The court denied the second motion. The mother arrived in the courtroom at 11:26 a.m. and was personally present for the rest of the trial.

The mother conceded that the children could not be returned to her care yet, testifying, "I believe I still need to complete my substance abuse treatment." The juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(d), (f), and (*l*) (2021). She appeals.

**II. Discussion.**

**A. Motions to Continue.**

The mother made two separate motions to continue and relied on separate grounds for each. We review a juvenile court's denial of a motion to continue for an abuse of discretion. *In re M.D.*, 921 N.W.2d 229, 232 (Iowa 2018). "A court abuses its discretion when 'the decision is grounded on reasons that are clearly untenable or unreasonable . . . .'" *Id.* (citation omitted). "A motion for continuance shall not be granted except for good cause." Iowa Ct. R. 8.5. When considering

the juvenile court's denial of the motion, "we will reverse only 'if injustice will result to the party desiring the continuance.'" *In re R.B.*, 832 N.W.2d 375, 378 (Iowa Ct. App. 2013) (citation omitted). "The concept of justice incorporates a prejudice component, which must be viewed in a pragmatic fashion." *Id.*

"[T]ermination hearings involve state action that threatens to deprive parents of their liberty interests in the case, custody, and control of their children," so a parent's right to due process is implicated. *M.D.*, 921 N.W.2d at 233. Insofar as the mother argued a continuance was necessary to protect her due process rights, our review is de novo. *See id.* at 232. ("Constitutional claims, such as the deprivation of due process, are also reviewed de novo."). Achieving procedural due process "involves a careful balancing of the personal interest of litigants, the ability of the court system to accommodate and provide safeguards for litigants, and the broad interests of the government to both provide safeguards and protect the interests of all." *Id.* at 233. When evaluating a due process challenge, we must keep all of the competing interests in mind; while a continuance may be helpful to a parent, "such continuances may be detrimental to the best interests of the children." *Id.*

***First Motion.*** The mother filed a written motion to continue on the afternoon of January 23, 2022—less than two days before the termination trial was scheduled to start at 9:00 a.m. on January 25. The mother asked the court to continue the termination trial because she "checked into inpatient [substance-abuse] treatment" on January 18. She also asked for a continuance because "the State . . . filed nearly 100 exhibits, on the eve of trial" and she would not be able to review the exhibits with her attorney. The mother asserted, "Termination of one's

parental rights where the Mother and her attorney are not afforded proper notice to be heard would violate the Mother's due process rights." In an attachment to the motion, a certified alcohol and drug counselor stated the mother was receiving inpatient services and "will not be able to be present for an all-day hearing while she is engaging in inpatient treatment services." The mother's potential discharge date from treatment was listed as February 8.

The court denied the mother's motion on January 24, noting the termination petition was filed September 16, 2021, and the mother's substance abuse "ha[d] been a concern for much longer than that." The court recognized the mother "had ample time previously to [seek treatment]" and concluded "the current treatment is not a sufficient reason to delay permanency for the child[ren]." In denying the mother's motion to continue, the court provided that the mother could appear by telephone if she chose.

Here on appeal, the mother argues the court's denial of her motion forced her to choose between violating the court's order that she complete inpatient treatment or abandon her right to be present during the termination trial. But this situation is not quite the catch-22 the mother paints it to be. The mother's delayed participation in substance-abuse treatment is not outside of her control; her use of methamphetamine has been an issue throughout this case.[4] She attended inpatient treatment from April 27 to May 15, 2021, but relapsed almost immediately after, as she tested positive for methamphetamine on June 3. The mother then

---

[4] At the termination trial, the mother testified she started using methamphetamine about three and one-half years before. And her substance abuse was one of the reasons DHS became involved with the family in November 2019.

admitted using methamphetamine in August and, at the termination trial, testified her last date of use was January 14, 2022. It was long apparent the mother was in need of more substance-abuse treatment, but she waited more than seven months after her June 2021 relapse to enter treatment again. Her delay in entering treatment does not constitute good cause for a continuance. *See In re K.A.*, 516 N.W.2d 35, 37 (Iowa Ct. App. 1994) (affirming court's denial of motion to continue by mother, who was attending inpatient treatment, because "[t]he children involved in this termination proceeding cannot spare more time waiting for their mother to achieve goals of the case plan which were set forth two years ago").

Plus, perhaps even more significantly, the mother's initial request for a continuance implied she would not be able to participate because she could not leave inpatient treatment. The court resolved this issue by ordering that the mother could participate via phone rather than attending in person. It was not until after 3:00 p.m. on the day of the trial—after the mother had already left treatment and was in the courtroom—that the mother uploaded evidence from a drug counselor stating "it is not practical for her to be involved in an 8-hour phone or Zoom hearing."[5] The mother urges us to conclude the court abused its discretion by forcing her to leave treatment when it denied her first motion to continue, but the court had no reason to know the mother would be unable to participate via telephone at the time it entered its ruling.

---

[5] We point out that even this late-filed note from the treatment counselor did not say the mother would be prevented from participating via phone if the court denied the motion to continue. "Not practical" suggests the treatment facility thought it was "not wise to put into or keep in practice or effect"—not that it was impossible or forbidden. *Impractical*, Merriam-Webster, https://www.merriam-webster.com/dictionary/impractical (last visited Apr. 21, 2022).

The mother also argues the prejudice to her—by the court's denial of her motion to continue—"is greatly compounded by the filing of 106 exhibits by the State of Iowa on the eve of trial, at a time when the mother was in an inpatient treatment facility and unavailable." The mother relies on the fact her attorney was "recently" appointed to represent her. The mother's attorney filed her appearance in the case on October 20, 2021—more than three months before the termination trial took place. And, while we cannot be certain because the juvenile court did not take judicial notice of the CINA cases, it appears many of the exhibits filed by the State in the TPR case would have previously been entered in the CINA case. Some of the exhibits were new, and the mother may have benefitted from discussing them with counsel before trial. But still, the juvenile court seemed to understand the mother's decision to enter inpatient treatment less than ten days before the termination trial was scheduled to begin—and after the children had been removed for approximately twenty-two months—was a delay tactic.

> It is far from unknown . . . for continuance motions to serve as a mere delaying tactic. . . . The trial judge must sense whether a given continuance motion stems from a legitimate need, or from a wish to delay. From its closer vantage point, the trial court can better sort through these matters than an appellate court can.

*State v. Teeters*, 487 N.W.2d 346, 348 (Iowa 1992). Given the facts before the court at the time it denied the mother's first motion to continue, we cannot find the district court abused its discretion.

The mother also makes a due process argument as to why her first motion to continue should have been granted. Relying on *M.D.*, she analogizes her situation of attending inpatient treatment to that of an incarcerated parent and asserts "parents are entitled to due process by being allowed to fully participate in

person, or via telephone, for the entire hearing." *See* 921 N.W.2d at 237 ("[T]he standard now established . . . for juvenile courts to follow in termination hearings involving incarcerated parents is compatible with what a justice system should do for all litigants who need a reasonable accommodation."). But even if we accept the mother's analogy, *M.D.* provides that parents have a right to participate—it does not hold that parents must be given a chance to be physically present at a termination trial. *See id.* at 234 ("Generally, an incarcerated parent who is unable to physically attend a termination hearing must be given the opportunity to participate in the hearing by alternative means."). The juvenile court denied the mother's motion to continue the termination trial until she successfully discharged from treatment and could be personally present but gave her an alternative means to participate—via phone from the treatment facility. This comports with the requirements of *M.D. See id.* at 236 ("[W]e adopt the standard that juvenile courts in this state must give incarcerated parents the opportunity to participate from the prison facility in the entire termination hearing by telephone or other similar means of communication that enables the parent to hear the testimony and arguments at the hearing.").

On appeal, the mother maintains "the treatment facility did not support [the telephone] option under the guise of its treatment protocol," suggesting the option to participate from treatment was unworkable. But, as we already pointed out, the mother did not alert the court of any issue regarding participating via phone until the trial was almost over, at which point the mother had already left treatment and was personally present in the courtroom. We cannot find the juvenile court violated the mother's due process right to participate when the court was not aware of the

problem, and we will not speculate on what the court would have or should have done if it had been given other information before the termination trial began. *See id.* at 235 ("[T]he process due in each case is flexible depending on the particular circumstances.").

The court neither abused its discretion nor violated the mother's constitutional rights when it denied her first motion to continue.

***Second Motion.*** The mother was not present at the time the termination trial was scheduled to begin at 9:00 a.m. Her attorney orally moved to continue the trial and, in support of the second motion, called the maternal grandmother to testify.[6] The grandmother testified the mother left drug treatment at the hospital against medical advice at approximately 9:30 p.m. the night before but was experiencing chest pain and "had a lot of pain in her legs." So she drove the mother back to hospital at 12:15 a.m. The grandmother testified, "[It's] her heart and lungs, and they're not sure if she's got a pulmonary embolism and blood clots in her legs." When asked if the mother had been re-admitted, the grandmother testified the mother was still in the emergency room when she last saw her. The county attorney resisted the mother's motion to continue the trial and suggested the record could be kept open and the mother could participate by deposition once she was able. The children's guardian ad litem agreed with the county attorney's proposal.

---

[6]The mother did not make a due process challenge when bringing her second motion to continue, so we review the denial of this motion for abuse of discretion only.

The juvenile court denied the mother's second motion to continue from the bench, ruling:

> [B]ased on the history this Court has with this family, which has been for a long time, seven years, and unlike the testimony of [the maternal grandmother], it's been clear that [the mother] has had a substance abuse issue for most, if not all, of that time. And the timing of the admittance into substance abuse treatment one week before the termination, and then seeking that as a motion to continue the termination trial, the timing is, you know, is very questionable.
>
> And, of course, I denied that motion. And then this series of events happens. I have no medical information to indicate that mom is unavailable by phone. That option was available. If there was something where a medical doctor is telling me that, no, she cannot be available, I may be more inclined to consider the option, but all I know is that she's not here. She was taken to the emergency room at 12:15 last night, after leaving the hospital of her own accord, with seemingly all of the same issues that she had when she returned.
>
> Based on the record made, I don't think there's good grounds to continue this matter. The trial was set for today and has been set for today since October of 2021, approximately three months ago.
> . . . .
> And, again, other than testimony presented, the Court has no proof that [the mother] could not otherwise be available, at least by telephone. That was never explored. And, again, I have no reason to believe that the tests she may, or may not, have been undergoing right now, that she wouldn't, otherwise, be available at some point.
>
> I understand that parents have the right to be present. She was given the opportunity to be present both by person or telephone. But these children have waited for permanency long enough. There's no indication as to how long whatever may be keeping [the mother] from court today, and this Court's ability to get this back in in a timely manner is not an easy thing.

The trial started without the mother, but she arrived at the courtroom at 11:26 a.m. and was personally present for rest of the day.

In denying the mother's second motion to continue, the juvenile court questioned the mother's purported symptoms, whether she had been admitted to the hospital, and, if so, whether that admission prevented her from participating by phone. The court seemed to believe the mother's trip to the emergency room was

another tactic for delay, which we think is akin to a credibility finding. *See Teeters*, 487 N.W.2d at 348 ("The trial judge must sense whether a given continuance motion stems from a legitimate need, or from a wish to delay."); *see also In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014) (providing that appellate court gives weight to the district court's findings of fact, "especially in assessing the credibility of witnesses" (citation omitted)). And it seems the court's wariness was well-founded. The mother introduced into evidence the discharge instructions she received from the hospital's emergency department, which showed she was diagnosed with "methamphetamine abuse" and a urinary tract infection—nothing involving her heart or lungs.

Delay tactics do not constitute good cause for a continuance. *See In re C.B.*, No. 20-1640, 2021 WL 610096, at *2 (Iowa Ct. App. Feb. 17, 2021) (concluding the denial of the motion to continue "was not unreasonable" where the court agreed "with the juvenile court's assessment of the motion as a delay tactic"); *cf. State v. Ford*, No. 15-0569, 2016 WL 3269624, at *4 (Iowa Ct. App. June 15, 2016) (concluding district court did not abuse its discretion in denying defendant's motion to continue when the court concluded the defendant's request "was simply a delay tactic"). We cannot say the juvenile court abused its discretion in denying the mother's second motion to continue.

**B. Termination Petition.**

Next, we consider the merits of the juvenile court's decision to terminate the mother's rights. We review termination decisions de novo. *In re A.H.*, 950 N.W.2d 27, 33 (Iowa 2020). Termination of parental rights under chapter 232 follows a three-step process. *See id.* But on appeal, we review only the issues raised and

briefed by the parent challenging the termination. *In re A.H.*, No. 21-1189, 2022 WL 246258, at *1 (Iowa Ct. App. Jan. 27, 2022); *see also Hyler v. Garner*, 548 N.W.2d 864, 870 (Iowa 1996) ("We exercise our de novo review only with respect to issues raised and preserved at trial. Similarly, our review is confined to those propositions relied upon by the appellant for reversal on appeal." (internal citation omitted)).

The mother does not contest the statutory grounds for termination, so we need not consider them. She focuses her challenge on whether termination of her rights is in the children's best interests and argues termination would be detrimental to the children due to the closeness of the parent-child bond.[7] *See* Iowa Code § 232.116(2), (3)(c).

In determining what is in the best interests of the child, the court is required to use the framework established in section 232.116(2): we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." The children's safety and need for a permanent home are "the defining elements in a child's best interests." *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011). Through the grandmother's financial assistance, the mother has maintained a home throughout the juvenile court's involvement with this family. But having a physical structure in which to raise the children does not mean the mother is currently capable of parenting the children. Her ongoing addiction to

---

[7] The mother also cites to Iowa Code section 232.116(3)(b), which provides that the court need not terminate a parent's rights when the child is over ten years old and objects to termination. Neither child is over ten, so this permissive factor is inapplicable, and we do not consider it.

methamphetamine, more than two years after DHS became involved again, prevents her from being the safe, stable caretaker these children need. *See In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012) ("We have long recognized that an unresolved, severe, and chronic drug addiction can render a parent unfit to raise children."). And while her bond with the children is not disputed, the mother presented no evidence that termination of her rights would be detrimental to the children. *See* Iowa Code § 232.116(3)(c). It is her burden to prove a permissive factor should be applied to prevent termination. *See In re W.T.*, 967 N.W.2d 315, 322 (Iowa 2021). She failed to establish a permissive factor to avoid termination. *See id.* at 324 (concluding the father's introduction of some evidence of a bond "does not establish the type of bond that would make termination in this case improper").

We affirm the termination of the mother's parental rights to C.M. and J.M.

**AFFIRMED.**