# IN THE COURT OF APPEALS OF IOWA

No. 24-0330
Filed July 24, 2024

**IN THE INTEREST OF H.P., L.P., and L.P.,**
**Minor Children,**

**T.P., Mother,**
    Appellant,

**L.P., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Pottawattamie County, Donna Bothwell, Judge.

A father and mother together appeal the juvenile court order terminating their parental rights. **AFFIRMED.**

J. Joseph Narmi of Narmi Law, Council Bluffs, for appellants mother and father.

Brenna Bird, Attorney General, and Lisa Hynden-Jeanes, Assistant Attorney General, for appellee State.

Eric Checketts of Checketts Law, PLC, Glenwood, attorney and guardian ad litem for minor children.

Considered by Tabor, P.J., and Greer and Schumacher, JJ.

**TABOR, Presiding Judge.**

This termination-of-parental-rights appeal involves three children: four-year-old L.W.P., three-year-old H.M.P., and one-year-old L.T.M.P. Taylor is the mother of all three children. Larry is the father of the youngest child.[1] In their petition on appeal, Taylor and Larry raise five claims.[2] (1) The juvenile court abused its discretion by denying their motions to continue the termination hearings. (2) The court erred in denying their request for a different judge. (3) The State failed to prove a ground for termination. (4) Termination was not in the children's best interests. (5) Exceptions preclude the need for termination. Finding no merit in those five claims, we affirm the termination order.[3]

## I. Facts and Prior Proceedings

This family came to the attention of the Iowa Department of Health and Human Services in November 2021 when police arrested Taylor for possession of methamphetamine and child endangerment. The two older children were adjudicated as children in need of assistance (CINA) in January 2022 after being

---

[1] Matthew is the father of the two older children. The juvenile court terminated his parental rights, but he does not appeal. In November 2023, Taylor and Larry had a fourth child who is not the subject of this appeal.

[2] Taylor and Larry retained the same attorney who filed a joint petition on appeal for the two parents. Because parents cannot raise issues on behalf of the other parent on appeal, we read each argument as though raised solely on behalf of the mother and/or father. *See In re D.G.*, 704 N.W.2d 454, 460 (Iowa Ct. App. 2005).

[3] We review termination-of-parental-rights proceedings de novo. *In re M.D.*, 921 N.W.2d 229, 232 (Iowa 2018). While we are not bound by the juvenile court's factual findings, we accord them weight, especially in assessing witness credibility. *Id.* Despite that de novo standard, we review the court's denial of the parents' motions to continue for an abuse of discretion. *Id.* Likewise, we will not reverse the court's recusal decision absent an abuse of discretion. *In re S.D.*, 671 N.W.2d 522, 528 (Iowa Ct. App. 2003). We also review any constitutional claims de novo. *In re N.N.E.*, 752 N.W.2d 1, 6 (Iowa 2008).

removed from parental custody in early December 2021. They have been living with relatives since their removal from Taylor's custody.[4]

During the next few months, Taylor began outpatient drug treatment while waiting for an inpatient placement. But the department reported that her participation in treatment and drug-testing was inconsistent. As for inpatient treatment, Taylor reported scheduling four different start dates but never entered the programs. She was equally inconsistent in her attendance at supervised visits with L.W.P. and H.M.P. But when she did show, she was attentive to their needs.

L.T.M.P. was born prematurely in November 2022. At birth, his urine tested positive for amphetamines, and his umbilical cord blood tested positive for methamphetamine and marijuana. With infant L.T.M.P. in her custody, Taylor was admitted to Iowa Family Works (IFW) in Council Bluffs to receive inpatient substance-use treatment. During her stay at IFW, Taylor had supervised visits with the two older children, progressing from once to twice per week, as well as a six-hour visit on the weekend.

Meanwhile, Larry told the department that he was pursuing inpatient substance treatment as well. But he was discharged from the program after only two days. And he also missed drug testing appointments. His stalled progress undermined Taylor's treatment goals too. She received an unsuccessful discharge from her IFW inpatient program in April 2023 after being dishonest about her whereabouts while in treatment and allowing Larry access to the children. That

---

[4] The children were placed back with their mother briefly in April 2023 when she was in residential treatment.

spring, Taylor had mixed results on drug testing. Her hair follicle test was negative, but her sweat patch screen was positive for methamphetamine.

Despite that, in June 2023, Taylor and the children advanced to semi-supervised visits. But in July 2023, Taylor had two positive drug screens. Because of those tests, L.T.M.P. was removed from her custody. According to the department case worker, Taylor never completed inpatient substance-use or mental-health treatment.[5]

In August 2023, the State petitioned for termination of Taylor's parental rights to H.M.P. and L.W.P. under Iowa Code section 232.116(1), paragraphs (e), (h), and (*l*) (2023). Three months later, the State petitioned to terminate the rights of both Taylor and Larry to their son L.T.M.P. on the same grounds. The court set both petitions for hearing on two dates in December. After considering the evidence, the court granted the State's petitions in February 2024.[6] The parents appeal together.

## II.    Analysis

We generally analyze termination cases in three steps. *In re D.W.*, 791 N.W.2d 703, 706–07 (Iowa 2010). First, we decide whether the State proved any ground for termination under Iowa Code section 232.116(1). *Id.* at 706. Second, we apply the best-interests framework in section 232.116(2). *Id.* at 706–07. Third, if that framework supports the State's petition, we check whether any factors in

---

[5] When Taylor gave birth to her fourth child in November 2023, he tested negative for drugs.

[6] The court did not terminate Taylor's parental rights to her oldest child, L.W.P., under paragraph (h) because he turned four years old shortly after the State filed its termination petition and the State did not move to amend to cite paragraph (f).

section 232.116(3) should preclude termination. *Id.* at 707. The parents raise two preliminary questions before challenging the three steps. They claim that the juvenile court abused its discretion in refusing to continue the termination hearing and in denying their motion for a different judge. We consider all five claims in turn.

### A. Motions to Continue

Parents' counsel contends the juvenile court abused its discretion in denying their two motions to continue the termination proceedings. The court set the termination hearing for December 15 and December 22. The parents' retained counsel did not enter his appearance until December 8. And he could not access the CINA files through EDMS until December 13. So he asked the court for more time to prepare. The State resisted, noting that L.W.P. and H.M.P had been out of their mother's custody for over two years. And L.T.M.P. had been out of parental care for "the majority of his young life." The guardian ad litem (GAL) did not resist, noting that he had "sympathy for an attorney having two days with access to a record to prepare for a termination."

The juvenile court recalled making it "incredibly clear" that "the parents choosing to fire the court-appointed counsel they had a week before the termination would not be a ground for a continuance." The court added:

> I also sympathize with an attorney not getting access, at no time on the—I think your appearance was filed on December 8—at no time on the 9th, 10th, 11th, or 12th was it brought to the Court or the clerk's attention that the attorney didn't have access knowing that this Court was not going to be inclined to continue it.

In their petition on appeal, counsel claims the court's ruling "in essence [tied] both hands behind [his] back, which violates the due process of the Mother and Father."[7]

A juvenile court should not grant a motion to continue unless the party seeking more time can show good cause. Iowa R. Juv. P. 8.5. We will only reverse a juvenile court's denial of a continuance if the court abused its discretion. *In re A.H.*, 950 N.W.2d 27, 33 (Iowa Ct. App. 2020). "A court abuses its discretion when the decision is grounded on reasons that are clearly untenable or unreasonable." *Id.* (cleaned up). When the grounds raised are non-constitutional, we only reverse if the moving party can show prejudice. *In re R.B.*, 832 N.W.2d 375, 378 (Iowa Ct. App. 2013). We see no abuse of discretion in the juvenile court's disinclination to find good cause to delay the start of the termination hearing. As the State notes on appeal: "both parents had competent court appointed attorneys throughout the pendency of the CINA and [termination] cases. They made the choice to hire private counsel on the eve of the termination hearing knowing time is of the essence in [termination] matters." In ruling on the motion to continue, the court was also free to weigh the need to prevent undue delays in permanency. *In re C.W.*, 554 N.W.2d 279, 281 (Iowa Ct. App. 1996). The court properly exercised its discretion in denying the parents' first motion to continue.

Parents' counsel filed a second motion to continue on the second day of the termination hearing. That motion asked for a continuance because Taylor was

---

[7] The parents also complain the termination petition on the fourth child was filed a month before the hearing date but, because that child is not a part of this proceeding and the parents do not develop the significance of that petition to the requested continuance, we will not address the issue further.

"putting on a drug screen patch" that day and, in her view, "[t]he outcome of this patch would be beneficial to all parties involved." The motion also asserted that no party would be prejudiced because the department was still involved with the family after the birth of Taylor's fourth child. The State again resisted and the GAL took no position. The court denied the motion, but offered to keep the record open so that counsel could submit the drug-patch results and any new substance-use evaluation for his client.[8]

In their petition on appeal, the parents reiterate that no party would have been prejudiced by granting their motion to continue. The State responds that Taylor should not have waited until the eve of termination to take positive steps to address her addiction. *See In re K.A.*, 516 N.W.2d 35, 37 (Iowa Ct. App. 1994) (examining "a parent's past performance in determining whether a continuance of a termination proceeding[] should be granted").

On this record, we see no abuse of discretion in the court's denial of the second motion to continue. We agree with the State's view that the motion amounts to "no more than a general desire to have more time to do things [the parents] should have been doing throughout the entire case."

## B. Different Judge

At the start of the termination hearing, the parents' counsel asked the juvenile court judge to recuse herself because she had presided over the CINA proceedings. Counsel reasoned that it was "unfair" for the parents "to sit before

---

[8] Taylor's sweat testing was negative for controlled substances in the January 2024 report. And her new substance-use evaluation found that she was "in the action stage of change and at a low risk for relapse."

the same judge" in both matters. The court denied the motion, noting that our supreme court has found "that it is actually more beneficial that it's one family, one judge." We review that denial for an abuse of discretion. *In re S.D.*, 671 N.W.2d 522, 528 (Iowa Ct. App. 2003). And we find none. In rejecting a similar claim more than a decade ago, our court noted "any knowledge gained from having presided in the earlier termination proceeding did not require disqualification." *In re Q.A.S.*, No. 13-1182, 2013 WL 5229746, at *4 (Iowa Ct. App. Sept. 18, 2013) (interpreting Iowa Code section 602.1606(a) on judicial disqualification).

### C. Ground for Termination

The parents allege that the State failed to offer clear and convincing evidence of the three grounds for termination in its petitions. On appeal, they cite paragraphs (e), (h), and (*l*) in the issue heading but do not provide a discrete argument contesting each ground in the body of their petition. Rather, as the State notes, the parents' argument is "nothing more than a litany of services they claim to have satisfactorily completed over the course of the court's involvement."

Where, as here, the court terminates on more than one ground, we may affirm on any alternative supported by the record. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We focus on paragraph (*l*). It authorizes termination when (1) the children have been adjudicated CINA under section 232.96 and custody has been transferred under section 232.102; (2) the parents have a severe substance-use disorder as described by either (a) "the most current edition of the diagnostic and statistical manual prepared by the American Psychiatric Association," and the parents present a danger to themselves or others as shown by prior acts or (b) "the disorder is evidenced by continued and repeated use through the case, the

[parents'] refusal to obtain a substance use disorder evaluation or treatment after being given the opportunity to do so," and the parents present a danger to themselves or others as shown by prior acts; and (3) there is clear and convincing evidence that the parents' prognoses indicates that the children will be unable to be returned to their custody within a reasonable time considering the children's age and need for a permanent home. Iowa Code § 232.116(1)(*l*).

Both Taylor and Larry struggle with diagnoses of severe methamphetamine use disorder. The juvenile court chronicled the mother's history of drug use:

> Taylor has continued to test positive throughout the underlying CINA actions. She tested positive for methamphetamine during her pregnancy with [L.T.M.P.] thereby exposing him to the drug and causing him to test positive at birth. While briefly back in her care in July 2023, [L.T.M.P.] *again* tested positive for methamphetamine at 4,843pg/mg. She continued to test positive for methamphetamine during her most recent pregnancy as well. Her drug use is a danger to her children. She has maintained no prolonged period of sobriety that would ensure she is no longer a danger to others due to her drug use. [The department case worker] correctly noted that Taylor is only now starting to address the drug concerns that started the underlying CINA actions.

The court provided a similar summary for the father:

> Larry repeatedly used methamphetamine throughout the life of the case, testing positive all the way through the first day of the termination hearing. If considering no shows as positive tests, Larry has had 24 positive drug tests since January 2023. He left inpatient treatment . . . after three days. He obtained a substance abuse evaluation in May of 2023 and was recommended to complete extended outpatient treatment. However, Larry quit outpatient treatment after one individual appointment and two group sessions. While being around Larry during her pregnancy with [L.T.M.P.], Taylor and [L.T.M.P.] tested positive for methamphetamine. Again in July 2023 when Taylor was allowing Larry to be around [L.T.M.P.] without prior approval from [the department], [L.T.M.P.] tested positive for methamphetamine at an alarming amount. Larry's drug use is a danger to [L.T.M.P.].

Like the juvenile court, we find this record includes clear and convincing evidence that the prognoses of both parents strongly suggest that the children could not be safely returned to their custody within a reasonable time considering their young ages and need for a permanent home. While it is encouraging that Taylor is now making strides against her addiction, her progress is too tenuous to risk reunification. Termination was proper under paragraph (*l*).

### D. Best Interests of the Children

The parents next argue that termination of their parental rights is not in the children's best interests. Taylor and Larry stress that they both have "a very strong bond with their children" and are attentive to their needs during visits. They also hypothesize that these three children "may never know" their youngest sibling if we affirm the termination-of-parental-rights order.

In assessing the children's best interests, we consider their safety; the best placement for furthering their long-term nurturing and growth; and their physical, mental, and emotional condition and needs. *See id.* § 232.116(2). We also weigh their integration into a foster family. *See id.* § 232.116(2)(b). Like the juvenile court, we have concerns about the children's safety if returned to the parents' custody. The court observed: "No parent has fully followed through with the recommendations nor maintained sobriety." Given that lack of follow-through, the parents are not the best placement for ensuring the children's long-term development.

As for their sibling connections, the parents' concern for severing the children's ties with their youngest brother is too speculative to overcome the benefits of achieving permanency for L.W.P., H.M.P., and L.T.M.P. *See In re J.E.*,

723 N.W.2d 793, 800 (Iowa 2006) (noting preference to keep siblings together is not absolute).

### E. Permissive Factors

In their final claim, the parents contend the juvenile court should have avoided termination under Iowa Code section 232.116(3), paragraphs (a) and (c). Under paragraph (a) a court need not terminate if the children are in the legal custody of a relative. Under paragraph (c), the court need not terminate if there is clear and convincing evidence that ending the legal relationship would be detrimental to the children because of their close relationship with the parents. Our supreme court has interpreted section 232.116(3) to place the burden on the parents to show that these permissive factors apply. *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018).

Taylor contends that L.W.P. and H.M.P are in the "custody" of their aunt and that she and the aunt have "worked together" in the children's best interests. But relative placement is different from relative custody. Because the children have been in the legal custody of the department, section 232.116(3)(a) does not apply. *See In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014).

Both Taylor and Larry argue that termination of their rights will be "absolutely devastating" to the children because of their very strong bond with their parents. The record supports Taylor's assertion that she has loving relationship with the children. The case worker testified: "She interacts well with them. The kids always come to her to seek security, and if they are hurt, go to her. They play well together. She's always very caring to them and provides food for them." The worker was less sure of Larry's connection with his son. In the words of the case

worker: "It's hard to bond with a child when there is not continual parenting, and [they haven't] been able to . . . because of drug usage."

But assuming that both parents have a healthy bond with their children, it is not enough to trigger the exception to termination under paragraph (c).  The parents "failed to provide the clear and convincing evidence necessary to show that, on balance, that bond makes termination more detrimental than not."  *See In re W.M.*, 957 N.W.2d 305, 315 (Iowa 2021).  As the juvenile court found, the parents' substance-use disorders prevented them from offering a safe and healthy environment for their children.

**AFFIRMED.**